# THE PEOPLE *ex rel.* The Gilman, Clinton and Springfield Railroad Company

*v.*

# THE SUPERVISOR AND TOWN CLERK OF THE TOWN OF HARP.

1. MUNICIPAL SUBSCRIPTION—*whether the vote should fix the time the bonds shall run.* Where the law authorizing corporate subscriptions in aid of a railroad is silent as to what the petition for and notice of the election shall contain as to the length of time the corporate bonds shall run before their maturity, and the election is called according to law, it will not be essential to the validity of the election that the petition, notice of the election and vote of the people should fix the time when the bonds will mature.

2. In such a case, if the petition and notice had fixed the time the bonds of the township should run, it would have become, by the vote by which their issue was authorized, a condition that the supervisor could not disregard. But where the vote simply authorized the issue of bonds to a certain amount, the supervisor was left to fix the time they should run within the limitations of the law under which the vote was taken.

3. SAME—*where a majority vote is sufficient.* Where the law, under which an election is had on the question of corporate subscription to a railroad, required only that a majority of the legal voters of the municipality voting at such election should vote in favor of the proposed subscription: *Held,* that it was not essential that a majority of all the legal voters should vote for the proposition; but that it was sufficient that a majority of legal voters voting should so vote.

4. SAME—*enforced by mandamus.* Where the statute has been pursued in all its requirements, the election properly called, a proper notice thereof given, and an election held resulting in favor of a subscription by a township to the capital stock of a railroad company by a majority of the voters, as required by the statute governing in such case, and the railroad company has complied with all the conditions imposed, the company will be entitled to the bonds so voted, and their issue will be enforced by *mandamus.*

This was an application in this court for a *mandamus*, by the relators against the supervisor and town clerk of the town of Harp, in the county of DeWitt, to compel the subscription by such town of the sum of $25,000 to the capital stock of

the railroad company, and the issue of the bonds of the town
in payment thereof, in pursuance of a vote of the legal voters
of said town.  The material facts of the case may be found in
the opinion of the court.

Messrs. STUART, EDWARDS & BROWN, and Messrs. FULLER
& MOORE, for the relators.

Messrs. WELDON & BENJAMIN, for the respondents.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is urged that the bonds should not issue in this case, be-
cause the voters, in their petition, or the notice calling the
election, do not specify the period the bonds shall run.

The third section of the charter (see Private Laws 1869, p.
292,) prescribing the manner the petition shall be presented,
and the notice given, is entirely silent as to what they shall con-
tain.   The petition fixes the amount that was proposed to be
subscribed, and the rate of interest the bonds should bear.
The notice fixes the time and place of the election, the amount
proposed to be subscribed in bonds bearing ten per cent in-
terest, but omits, like the petition, to specify the time they
shall run.   It also imposes some other conditions, but there is
no pretense that the company have not fairly and in good faith
performed every condition imposed, by building their road
within the time and in the manner prescribed.

Had the petition and notice fixed the length of time the
bonds should run when issued, it would have become, by the
vote by which their issue was authorized, a condition that the
supervisor could not disregard.  But simply having voted
that he should issue them, he is left with a discretion as to
the time he will make them payable, within the time pre-
scribed by the fourth section of the charter, and he could ex-
ercise that discretion when he subscribed the bonds, or, fail-
ing to do so at that time, he could do so when he comes to
issue them.

The second and third sections of the charter say nothing about the time the bonds shall run. That is all provided for in the fourth section in defining the duty of the supervisor in subscribing and issuing the bonds. In defining his duty, the act provides that he shall issue bonds bearing interest at a rate not exceeding ten per cent, and the bonds shall run not exceeding twenty years, the interest payable annually. We are, therefore, clearly of the opinion that it was not essential to the validity of the election that the people should, by a vote, fix the time when the bonds should mature; and the voters having failed to fix the time, the supervisor was left to do so, within the limitations prescribed by the charter of the company.

It is also urged that a majority of all the legal voters of the township did not cast their votes in favor of subscription. The law under which the election was held contains no such requirement. The fourth section declares that: "If it shall appear that a majority of the legal voters of such counties, cities, incorporated towns or townships, voting at such election, have voted for subscription," etc., for the supervisor, etc., to make the subscription. We are wholly unable to see how this language can be construed to require more than a majority of those voting to confer the power to make the subscription and issue the bonds. The language is plain, and is not susceptible of construction.

To hold as we are asked to do by respondents, we should be compelled to reject the words "voting at such election," and no rule of interpretation will sanction their rejection. This election conformed to the requirements of the law in this particular, and in all others, so far as we can see from the record before us.

This case differs widely from the authorities referred to by counsel for respondents. In those cases there was a want of authority to subscribe or issue the bonds, whilst in this case the statute was pursued in all of its requirements. The requisite number of qualified persons petitioned for a call of

an election. The petition was presented to and the election called by the proper person, the proper notice was given, the election held and resulted in favor of subscription by a majority of voters, as contemplated by the statute, and the company having complied with all the conditions imposed, they are entitled to the bonds, and a peremptory writ of *mandamus* must be issued according to the prayer of the petition.

*Mandamus awarded.*