Syllabus.

---

## JAMES R. WILLIAMS

*v.*

## THE PEOPLE *ex rel.* Samuel J. Wilson, Collector.

*Filed at Mt.Vernon April 22, 1890.*

1. MUNICIPAL SUBSCRIPTION AND BONDS—*burden of proof to establish their validity.* Where municipal bonds are issued after the adoption of the constitution of 1870, the burden of proof rests upon the parties affirming their validity, to show affirmatively that they were authorized by a vote of the people of the municipality, under then existing laws, prior to the adoption of the constitution.

2. SAME—*vote of the people—notice of the election—the statutes considered.* An election held by the people of a county or other municipality, before the present constitution went into effect, for the purpose of voting upon the question of subscribing to the stock of a railroad company, when the proper notice required to be given of such election, by general or special statute, has not been given, is invalid, and will not authorize a subscription and issue of bonds in payment thereof.

3. Where the charter of a railway company vested in the county court of a county the discretionary power to call an election to vote on the proposition to subscribe to the capital stock of a railway company, but failed to prescribe any notice to be given of the election: *Held,* the general statute then in force applied, requiring thirty days' notice, and that it was the duty of the county court to give such notice to render the election valid.

4. While some of the provisions of the "Act to incorporate the Cairo and Vincennes Railroad Company," approved March 6, 1867, are repugnant to certain provisions in the general Railroad act of 1849, yet there is no such repugnancy between the two acts, so far as the subject of notice is concerned, as to justify the conclusion that the requirement of thirty days' notice in the latter act was repealed by implication by the former act.

5. SAME—*vote of the people—double proposition—as, for two railroad companies.* It is irregular to submit propositions for subscription to more than one railway company at the same time, and as a single proposition, so that a voter must vote for all or none. Such submission will afford ground to enjoin the issue of bonds, or a defense to a *mandamus* to compel their issue.

6. An act for the incorporation of a railway company authorized counties through which the road was located, to take a vote on the question of their subscription to the company: *Held,* that such act did

not authorize the county court of a county to submit a proposition. for voting a subscription to "any" railroad company which would build another road within five years, between certain points named. The act of 1849 contemplates a vote for or against a subscription to some one company, only.

7. SAME—*constitutional limitation—saving clause in favor of subscription under a prior vote of the people—curative act of 1869, not availed of in proper time.* The saving clause in the proviso of separate section 2 of the constitution of 1870, in regard to municipal subscriptions, to the effect that the section shall not affect the right to make such subscriptions, where the same have been authorized "under existing laws, under a vote of the people," etc., prior to the adoption of the constitution, refers to and embraces subscriptions that had been authorized by a vote of the people, under laws existing at the time the vote was taken.

8. Under this proviso, the subscription, to be saved, must have been authorized by a vote of the people, and therefore a subscription legalized by an act of the legislature, but not made in proper time, is excluded. All curative acts legalizing such votes, not acted upon by the municipality before the constitution took effect, were repealed by that instrument.

9. Under an act to incorporate a railway company, passed in 1867, the county court of a county submitted a proposition to the voters of the county to subscribe $100,000 to the capital stock of the company, but gave no notice of such submission to be voted on by the people. In 1869 an act was passed declaring all elections held under the act of 1867 valid and binding. After the constitution of 1870 had taken effect, the county court directed its clerk to make the subscription voted : *Held,* that the court having failed to exercise the authority conferred upon it by the curative act of 1869, prior to the adoption of the constitution, the authority itself was revoked by that instrument, and that the subscription and bonds issued in payment thereof were void.

APPEAL from the County Court of White county; the Hon. B. S. ORGAN, Judge, presiding.

This was an application by Samuel J. Wilson, collector of the revenue of White County to the County Court of that county for judgment against delinquent lands and lots for the taxes of 1888. The appellant, James R. Williams, a tax payer, filed objections to the entry of judgment against certain of his lands for the tax to pay interest on $99,500.00 of the bonds of said county, issued in 1872 to the Cairo and Vin-

·cennes Railroad Company, or bearer, with interest at 8 per ·cent per annum, payable semi-annually. The County Court ·overruled the objections and rendered judgment against the lands of the objector. The objections involve the validity of the bonds of which the following is the form:

·"No. . . . .                                                            $500

## UNITED STATES OF AMERICA.
### *White County Bond.* — *State of Illinois.*

"*Know all men by these presents,* that the county of White, in the State of Illinois, acknowledges itself indebted to the ·Cairo and Vincennes Railroad Company, or bearer, in the sum ·of $500, which sum the said county promises to pay said com- ·pany, or bearer, in the city of New York, twenty years after date, with interest thereon from and after January 1, 1873, at the rate of eight per centum per annum, payable half-yearly, ·on the first days of January and July of each year, on the pre- sentation and surrender at the place in the said city of New York where the Treasurer of the State of Illinois pays the in- ·terest and debt of said State, of the coupons hereunto attached.

"This bond is one of two hundred of like tenor and amount, ·of the same issue, and is issued pursuant to an order of the ·county court of said county, authorized by a majority of the legal votes cast at an election held in said county, pursuant ·to law, on the 1st day of October, A. D. 1867. This bond is also issued under the provisions of 'An act to incorporate the ·Cairo and Vincennes Railroad Company,' approved March 6, 1867, and under the provisions of an act to amend said act, approved February 9, 1869; also, under the provisions of 'An :act to fund and provide for the payment of the railroad debts of counties, townships, cities and towns,' approved April 16, 1869, and is in part payment of a subscription to the capital ·stock of the Cairo and Vincennes Railroad Company in the total sum of $100,000.

"In testimony whereof the said county of White has executed ·this bond by the county judge of said county, under the order

of the county court of said county, signing his name thereto, and by the clerk of said county, under the order thereof, attesting the same and affixing hereto the seal of said court.

"This done at the office of the clerk of said court this . . . . day of . . . . . . . . . :, A. D. 1872.

. . . . . . . . . . . . . . . . . . . . . . . . .,
*County Judge of White County, State of Illinois.*

Attest : . . . . . . . . . . . . . . . . . . . . . . . . .,
*Clerk of the County Court of White County, Illinois.*"

Section 10 of said Act of March 6, 1867, (Private Laws of 1867, Vol. 2, page 558) is as follows :

"Sec. 10. The several towns, cities or counties through or near which said railroad shall pass, may subscribe for and take stock in this company, and may issue bonds in payment for such stock, of $500 each, bearing interest at the rate of eight per cent per annum or less, payable half-yearly, in the city of New York, on the first days of January and July of each year, and bonds to run not longer than twenty-five years. And a tax of not more than one dollar on each $100 worth of taxable property may be levied and collected in such town, city or county, per annum, to pay the installments on such stock, or to pay the interest and principal of bonds issued in payment for such stock : *Provided,* that no such subscription shall be made, no such bonds shall be issued, and no such tax shall be levied, unless a majority of legal voters of said town, city or county shall vote for the same at an election to be held under order of the corporate authorities in case of towns and cities, and of the county court in case of counties : *Provided further,* that a majority of legal voters at any such election shall be held as a majority of the legal voters of any such town, city or county, and the question of making a subscription, issuing bonds and levying taxes may be submitted as one question or as separate questions at such election, and either or all of said questions may be submitted to an election at any time, in the discretion of the authorities authorized to call such election."

37—132 ILL.

Section 3 of said Act of February 9, 1869, is as follows: (Private Laws of 1869, Vol. 3, page 259):

"Sec. 3.    Be it further enacted, that all contracts made by towns, cities and counties, into, through or near which the Cairo and Vincennes Railroad Company shall run, whereby, as an inducement for the construction of said railroad, such towns, cities and counties agreed, upon the completion of certain portions of said railroad, to sell to said company, at a nominal price, the stock of said company for which said towns, cities or counties, by a vote of their electors, had theretofore subscribed and agreed to issue bonds in payment thereof, thereby, in effect, agreeing to make a donation to said company of certain amounts of the bonds of such towns, cities or counties, as an inducement for the construction of said railroad, are hereby declared to be valid and binding upon such towns, cities and counties, and shall be carried into effect, in good faith, by the same; and all orders for and notices of elections, and elections and returns of such elections, in respect to such subscription of stock to said company, in any such towns, cities and counties, are hereby declared to be valid and binding upon such towns, cities or counties."

On the 4th day of September, 1867, the following, among other proceedings, were had and entered of record by said county court:

"It is hereby ordered by the court that an election be held on Tuesday, the first day of October, 1867, upon the following questions, to-wit:

"1.  That White county subscribe the sum of $100,000 to the capital stock of the Cairo and Vincennes Railroad Company.

"2.  That in payment of such subscription to the stock of said company, bonds of White county, Illinois, be issued to said railroad company, in the denomination of $500 each, said bonds to bear interest at the rate of eight per cent per annum, payable half-yearly, in the city of New York, on the first days of January and July in each year, said bonds to run twenty

years, and the faith of the county of White to be pledged for the payment of principal and interest thereon.

"3. That a tax of not more than one dollar on each $100 worth of taxable property of White county shall be levied and collected to pay the interest and principal of said bonds when issued.

"4. That the county court of White county shall not deliver the said bonds to any person or persons whatever until such time as said Cairo and Vincennes Railroad Company shall have completed the road from Vincennes to the south line of Wabash county, and the cars are running from Vincennes to said south line of said Wabash county.

"5. That the people of White county pledge themselves to vote a bonus of $100,000 to any railroad company which shall, within five years from this date, complete a railroad from St. Louis, Missouri, to Evansville, Indiana, running through the towns of Enfield and Carmi, in said White county, Illinois, said bonus, or any part thereof, not to be payable until said road shall be entirely completed and the cars running from said city of St. Louis to said city of Evansville.

"It is further ordered by the court, that all of said questions be voted upon as one question, and all voters of White county who favor the adoption of said propositions shall have written or printed on their ballot, 'Yes,' and all voters of White county who oppose the adoption of said propositions shall have written or printed upon their ballot, 'No.'"

On October 17, 1871, the county court entered the following order:

"It is ordered that all contracts heretofore made by this court with the Cairo and Vincennes Railroad Company, or its agents or attorneys, be and the same are hereby revoked, Gen. E. F. Winslow, agent of said railroad company, being in open court and assenting to said order.

"It is ordered that the clerk of this court be authorized and directed to subscribe to the capital stock of the Cairo and Vin-

cennes Railroad Company the sum of $100,000, in accordance with a vote of the people of said county at an election held in said county on Tuesday, the first day of October, 1867."

Mr. WILLIAM HAMILL, and Mr. J. R. WILLIAMS, for the appellant:

The election of October 1, 1867, was illegal and void, and could not confer any power and authority to issue the bonds, for the want of any notice of such election. The order for the election was September 4, 1867, and the election was held October 1, 1867, so that the thirty days' notice could not have been given.

The special act of 1867 not providing for any notice of the election, the general law of 1849 controlled. Scates' Stat. (1858,) p. 950, sec. 4; *Stephens* v. *People*, 89 Ill. 337; *Marshall County* v. *Cook*, 38 id. 44.

Without the authority of the vote of the people, at a legal election, the county authorities can not issue bonds to railroads. *Schuyler County* v. *People*, 25 Ill. 181; *Clarke* v. *Supervisors*, 27 id. 305; *Fulton County* v. *Railroad Co.* 21 id. 373; *People* v. *Tazewell County*, 22 id. 147; *Marshall County* v. *Cook*, 38 id. 52.

The failure to give thirty days' notice of the election was fatal to the right to issue county bonds. *Harding* v. *Railroad Co.* 65 Ill. 90.

The act of 1869 was passed to cure the defect in the election, but did not accomplish that object. *Williams* v. *Town of Roberts*, 88 Ill. 20; *People* v. *Jackson County*, 92 id. 453; *Force* v. *Town of Batavia*, 61 id. 99; *Marshall* v. *Silliman*, id. 218; *People* v. *Santa Anna*, 67 id. 57.

The power to make the subscription by curing defects in the election not having been exercised until the constitution of 1870 took effect, was abrogated by that instrument. *People* v. *Jackson County*, 92 Ill. 454.

The coupling together of several independent propositions in the call for an election was a fraud on the voters. *Supervisors* v. *Railroad Co.* 21 Ill. 338; *Puterbaugh* v. *Elliott*, 22 id. 157; *Marshall County* v. *Cook*, 38 id. 49.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The main objection urged against the validity of the bonds is, that the election of October 1, 1867, was not held in pursuance of legal notice thereof previously given, and, on this account, was invalid; and that the subscription to the stock of the railroad company was invalid, because it was not made until after the constitution of 1870 had been adopted, and because it had not been authorized, under existing laws, by a vote of the people of the county prior to such adoption.

The order of September 4, 1867, under which the election was held, is silent upon the subject of notice, and none of the proceedings of the county court in regard to the election, the subscription, or the bonds, contain any information as to the notice of the election. It not only does not appear from those proceedings what notice was given, but it does not appear that any notice whatever was given.

The bonds in question were issued after the adoption of the constitution of 1870. The burden of proof rests upon the parties affirming their validity to show affirmatively, that they were authorized by a vote of the people of the municipality, under existing laws, prior to the adoption of the constitution. (*Jackson County* v. *Brush*, 77 Ill. 59; *Middleport* v. *Ætna Life Insurance Co.* 82 id. 562; *The People ex rel.* v. *Jackson County*, 92 id. 441; *Town of Prairie* v. *Lloyd*, 97 id. 179.) We think, however, that the failure to give the requisite notice of the election in the present case is shown upon the face of the record itself.

Where an election was held by the people of a county or other municipality, before the present constitution went into

effect, for the purpose of voting upon the question of subscribing to the stock of a railroad company, and the notice required to be given of such election by general or special statute was not given, the election was invalid. (*Harding* v. *R. R. I. & St. L. R. R. Co.* 65 Ill. 90 ; *Stephens* v. *The People*, 89 id. 337 ; *The People ex rel.* v. *Jackson County*, 92 id. 441).

The "Act to incorporate the Cairo and Vincennes Railroad Company" approved March 6, 1867, under which the election of October 1, 1867, was held, does not prescribe any notice. Section 10 directs that the election be held under order of the county court, and that the questions of making the subscription, issuing the bonds and levying the tax may be submitted, either or all of them, "to an election at any time in the discretion of the authorities authorized to call such election." It will certainly not be contended that the county court "had power to order and hold an election without any notice to the electors. This would have been the veriest mockery, a delusion practiced under color of law." (*Harding* v. *R. R. I. & St. L. R. R. Co. supra.*) By the terms of the Act of 1867, the county court was authorized to "*call*" an election. Something more is involved in calling an election than the mere entry of an order that an election be held on a certain day. The voters must be summoned or notified to attend at a certain time and place or places, and cast their votes.

It rested in the discretion of the county court to determine the time when the election should be held, but it was none the less bound to give such notice of said election as was required by existing statutes. As the act of 1867 did not specify what notice should be given, it was the duty of the county court to follow the provisions of the general statute in regard to notice in such cases. The general statute then in force upon this subject was the act approved November 6, 1849, entitled "An Act supplemental to an act entitled 'An Act to provide for a general system of railroad corporations.'" (Public Laws of 1849, page 33).

Section 1 of the act of 1849 provides that whenever the citizens of any county were desirous that said county should subscribe for stock in any railroad company, etc., such county was authorized to subscribe for shares of the capital stock in such company in any sum not exceeding $100,000.00, and the stock so subscribed for should be under the control of the county court, etc. Section 2 provided, that, if the judges of the county court should deem it most advisable, they were authorized to pay for such subscription in bonds of the county, etc. Section 3 provided, that the railroad companies organized under the laws of this State were authorized to receive the bonds of any county becoming a subscriber to such capital stock at par and in lieu of cash, etc. Section 4 provided, among other things, as follows: "the judges of the county court of any county * * * desiring to take stock as aforesaid, shall give at least thirty (30) days' notice, in the same manner as notices are given for election of State or county officers in said counties, requiring said electors of said counties * * * to vote upon the day named in such notices, at their usual place of voting, for or against the subscription for said capital stock which they may propose to make, and said notices shall specify the company in which stock is proposed to be subscribed, the amount which it is proposed to take, and the time which the bonds proposed to be issued are to run, and the interest which said bonds are to bear." This Act is set out more fully in *Johnson* v. *County of Stark*, 24 Ill. 75.

It will thus be seen that the general act of 1849 required 30 days' notice of the election to be given. Under this act it was the duty of the county court of White County to give thirty days' notice of the election held on October 1, 1867. Such notice of thirty days could not have been given, because the order providing for the holding of the election on October 1, 1867, was not made by the county court until September 4, 1867, and there were not thirty days between the date of the order and the day fixed for holding the election.

While some of the provisions of the act of 1867 are repugnant to certain provisions in the act of 1849, yet there is no such repugnancy between the two acts so far as the subject of notice is concerned, as to justify the conclusion that the requirement of 30 days' notice in the latter act was repealed by implication by the former act. Almost the precise question now under discussion was before this court in *Harding* v. *R. R. I. & St. L. R. R. Co. supra.* There, a vote was held in the county of Warren upon the question of subscribing to the stock of a railroad company, and thirty days' notice of the election was not given; an Act of March 4, 1869, had required 30 days' notice to be given; an Act of March 25, 1869, contained no requirement as to notice, but provided as follows: "Such question shall be submitted in such manner as the county authorities may determine as to the county," etc. It was held in that case, that there was no repugnancy between the two acts upon the question of notice, and no repeal by implication by the latter act of the 30 day clause in the former act. It was also there held, that, if the Act of March 25, 1869, did repeal by implication the act of March 4, 1869, then, under the clause in the former Act which authorized the question to be submitted in such manner as the county authorities might determine, such authorities would be obliged to follow the general law of 1849 above set forth, and give 30 days' notice as therein required; such notice not having been given we said in that case: "As the election was invalid for want of sufficient notice, there was no power to make the subscription." So, also, is it true in the case at bar, that the election of October 1, 1867, was invalid for want of sufficient notice, and no power was thereby conferred to make the subscription.

Our attention is called to the fifth question named in the order of September 4, 1867, and it is claimed that said fifth proposition was improperly submitted to the votes of the people. This is undoubtedly true. By the terms of the act of 1867, the questions of subscribing to stock, issuing bonds and

levying a tax, which were to be voted upon at the election, concerned and had reference to the Cairo and Vincennes Railroad Company alone, and not any other railroad company. That act gave no authority to the county court to submit the question of voting a bonus of $100,000.00 to any railroad company to be built within five years from St. Louis, Missouri, to Evansville, Indiana. So, also, the act of 1849, evidently contemplated a vote for or against subscription to some one company only, said company to be specified in the notice.

The submission of two separate propositions to subscribe for stock, or of a proposition to vote on two roads at the same time, has been condemned by this court as a fraud on the voters, because they have no choice in such case but to vote for or against both propositions, and are virtually forbidden to vote for one road if they do not also vote for the other. (*Supervisors* v. *M. & W. R. R. Co.* 21 Ill. 338; *People ex rel.* v. *County of Tazewell*, 22 id. 147). But the erroneous character of the fifth question named in the order concerns merely the mode of submission, and not the authority or power to order or hold the election. The objection to such double submission might have been taken advantage of in a proceeding to enjoin the issuance of the bonds, or as a defense to an application for mandamus to compel the issuance of the bonds, but it is too late to make the objection after the bonds have been issued and passed into the hands of *bona fide* holders, as we held in *Clarke* v. *Board of Supervisors of Hancock County*, 27 Ill. 305.

The question now arises whether or not there has been any legal ratification of the election of October 1, 1867, which was invalid for lack of sufficient notice.

The Act of February 9, 1869, contains these words: "All orders for and notices of elections, and elections, and returns of such elections, in respect to such subscription of stock to said company, in any such * * * counties, are hereby declared to be valid and binding upon such * * * counties."

Did this provision of the act of 1869 validate the election of October 1, 1867?

On October 17, 1871, the county court of White county made an order that its clerk "be authorized and directed to subscribe to the capital stock of the C. & V. R. R. Co. the sum of $100,000.00 in accordance with a vote of the people of said county at an election held in said county on Tuesday, the 1st day of October, 1867." If it be assumed that a direction to the clerk to subscribe was, in effect, a subscription, then the county did not make a subscription to the capital stock of the railroad company until the constitution of 1870 had been in force for more than a year. Separate section 2 of the constitution, which took effect on July 2, 1870, declares that "No county * * * shall ever become a subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however,* that the adoption of this article shall not be construed as affecting the rights of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption." Clearly, White county could not subscribe to the capital stock of the Cairo and Vincennes Railroad Company on October 17, 1871, unless such subscription had been authorized, under existing laws, by a vote of the people of that county prior to July 2, 1870. The "existing laws" here referred to were the laws which existed when the vote was taken, and by virtue of whose provisions the vote was authorized. The subscription must have been one that had been authorized by a vote of the people, and therefore a subscription legalized by an act of the legislature is excluded. If the subscription had been made by the county before the adoption of the constitution, it would be necessary to consider whether the legislature had the power to authorize the county court to make the subscription by curing the defects in the election through the provisions of the act of 1869. But the authority to sub-

scribe for the stock was not exercised by the county authorities before the constitution of 1870 went into effect. Therefore, even if the legislature had the power to cure the invalidity of the election, the curative act of 1869 was repealed by separate section 2 of the constitution before the county court took any steps under the provisions of that act. The court having failed to exercise the authority conferred upon it by the curative act prior to the adoption of the constitution, the authority itself was revoked by that instrument. The proviso of separate section 2 abrogated all unexercised power attempted to be conferred by the act of 1869. The views here expressed are in harmony with the decision of this court as announced in the case of *The People ex rel.* v. *Jackson County*, 92 Ill. 441. To the same effect also is the case of *County of Richland* v. *The People*, 3 Bradwell's Rep. 210. The contracts revoked by the order of October 17, 1871, as they are set forth in the record, did not amount to binding contracts of subscription. (*People ex rel.* v. *County of Tazewell*, 22 Ill. 147.) But whatever view might be taken of them in this regard, they were set aside by agreement at the date of the order, and, by then directing that a subscription be made, both parties assumed that none had been made.

We are aware that the Supreme Court of the United States has given a different interpretation to the proviso in separate section 2 from that here adopted. In the case of *Jonesboro City* v. *Cairo & St. Louis R. R. Co.* 110 U. S. 192, the phrase "under existing laws" is made to relate to the time of the adoption of the constitution and not to the time of taking the vote of the people, and it is there held that it was not the intention of the proviso to make a difference between a subscription authorized by a vote legally taken, and a subscription authorized by a vote taken without legislative authority but subsequently, and before the constitution went into operation, legalized by a valid act of the assembly. The *Jonesboro City* case, decided in January, 1884, is in direct conflict, upon this

point, with the *Jackson County* case decided in June, 1879. It may be that the attention of the Federal Supreme Court was not called to the decision of this court in the Jackson County case, when the Jonesboro City case was before it. (*Vide Fairfield* v. *County of Gallatin,* 100 U. S. 47).

But whether the Jonesboro City case was decided in ignorance of the Jackson County case, or because the doctrine of the latter was not regarded as sound, we are disposed to adhere to our own construction of the proviso in question.

It follows from what has been said, that the subscription ordered by the county court on October 17, 1871, could not lawfully be made, and that the bonds issued in payment of such subscription are invalid even in the hands of innocent holders. (*Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 564; *Barnes* v. *Town of Lacon,* 84 id. 461; *Lippincott* v. *Town of Pana,* 92 id. 24; *Gaddis* v. *Richland County,* id. 126; *Ryan* v. *Lynch,* 68 id. 160.) Persons purchasing such bonds are bound to take notice of the provisions of the acts of the legislature authorizing the election and the subscription, and of the proceedings on record in the county Court in relation thereto, and of the requirements of the fundamental law upon the subject. A reference to these sources of information would have disclosed the want of power in the county court of White county to issue the bonds in question.

The judgment of the county court is reversed, and the cause is remanded to the County Court with directions to proceed in accordance with the views herein expressed.

*Judgment reversed.*