(No. 22800.—)

CARL L. FIEDLER *et al.* Appellants, *vs.* THE SANITARY DISTRICT OF BLOOM TOWNSHIP *et al.* Appellees.

*Opinion filed January 23, 1935—Rehearing denied Feb. 21, 1935.*

Dennis K. Lindhout, for appellants.

Howard P. Roe, and Urban A. Lavery, for appellees.

Mr. Justice Stone delivered the opinion of the court:

Appellants, as real estate tax-payers and legal voters and residents of the appellee sanitary district, on behalf of themselves and others similarly situated, filed a bill in the circuit court of Cook county seeking to enjoin the issuance of certain bonds by the district. On hearing, the bill was dismissed for want of equity, and this appeal resulted.

The appellee district was organized on June 4, 1928. It includes an area of about 3900 acres with an estimated population of 23,000. On September 21, 1933, its board of trustees adopted an ordinance reciting that the building of a new sewage disposal plant was necessary for the health of the district and calling an election on the proposal to issue $300,000 in bonds for that purpose. The election was called for October 24, 1933. This ordinance provided that notice of the election should be published in a newspaper in the city of Chicago Heights, and publication was had in accordance therewith on September 26. The

ordinance further provided that notice should be posted in all of the eighteen precincts of the city of Chicago Heights included in the district. This was done on September 30. By oversight the ordinance as passed on September 21 and the notices published on September 26 failed to designate a polling place for that area of the district, consisting of about 180 acres, lying outside the city of Chicago Heights, though both the original ordinance and the notice as published called an election for the entire area of the district. On September 28 the ordinance was amended, correcting the omission by providing a polling place in the area outside the city of Chicago Heights. Notices of the election were posted in that area on September 30 at six different places. The territory outside the city contained not to exceed 40 registered voters. The area inside the city contained something more than 7500 registered voters. The vote of the entire district showed 1975 for and 1400 against. The vote of the area outside the city showed 19 for and 3 against.

Appellants by their amended bill charge that the two ordinances are void, and that there is a material variance between them as to the division of the territory of the district into voting precincts and in fixing polling places. They also argue that the election was not properly called, and that, proper proceedings not having been taken, the election was null and void. On hearing, the chancellor found the election to have been validly held; that the notices posted and published were in substantial conformity with the statute as to the time of posting and publishing; that as to the portion of the district lying outside of the city of Chicago Heights notices were posted within the time required by statute, and that a majority of legal voters in the outer area cast their votes at said election.

Counsel has assigned numerous errors, which, however, group themselves under two heads: (1) That the ordinance is void because the board of trustees failed to exer-

cise its discretionary power to determine a system for disposal of sewage; and (2) the call of the election by the board of trustees by its ordinance of September 21 and amendment thereto of September 28 did not fulfill the requirements of the statute.

In support of counsel's first contention, he says that the power of the appellee district to borrow money is given to it by section 9 of the Sanitary District Sewage Disposal act, and compliance therewith is indispensable to a valid election under the act. Section 9 of the Sanitary District Disposal act (Smith's Stat. 1933, chap. 42, par. 308,) provides that when the board of trustees of the sanitary district desires to issue bonds it shall order an election to be held upon the question. The notice of the election shall state the amount of the bonds to be issued, the polling places at which such election shall be had, and shall be posted in at least five public places at least twenty days prior to such election. Such election notice shall also be published in a newspaper published in the district at least twenty days prior to the election. This section also requires that the board of trustees appoint the judges and clerks, provides for the filing of the result of the election, and gives the form of the ballot substantially to be followed.

The ordinance recites that the district has caused the necessary study to be made of the proper treatment and disposal of sewage in the district and has adopted the report of its engineers showing that it will require in excess of $300,000 for the purpose of treatment and disposal of sewage; that the revenues of the district are not sufficient to construct the necessary plants, and it will be to the best interest of the district to borrow $300,000 for that purpose. This was a sufficient statement of the purpose. *Lussem* v. *Sanitary District,* 192 Ill. 404; 2 Dillon on Mun. Corp. (5th ed.) p. 1381; 5 McQuillin on Mun. Corp. p. 999.

The record also shows, as to the method of calling the election, that in eighteen precincts in the city of Chicago

Heights, and in the one outside, the required notices were posted, and that on September 26 the notice of an election in the district appeared in a newspaper in Chicago Heights. The amendment to the ordinance of September 28 fixed a polling place in the territory outside. As Chicago Heights is under the jurisdiction of the city election commission of Chicago, that body fixed the polling places and designated judges and clerks thereat for the precincts of the district within the city of Chicago Heights. The ordinance adopted this action. There was no publication in a newspaper twenty days prior to the election showing the location of the voting precinct in the territory outside the city of Chicago Heights. This is a defect which it is claimed vitiates the election.

Counsel for appellees argue that the oversight of the board in omitting from the ordinance as first adopted the designation of a polling place in the territory outside the city of Chicago Heights does not vitiate the election. They point out that a polling place was fixed and the notices of the election posted within this area in the time and manner required by the statute. They say that because of the dates of publication of the newspaper in the city of Chicago Heights they could not, after the adoption of the amendment, secure a re-publication twenty days prior to the election. They argue that there has been a substantial compliance with the requirements of the statute.

Counsel for appellants cites, in support of his contention that section 9 must be strictly followed, *People* v. *Hartquist,* 311 Ill. 127, and *Roberts* v. *Eyman,* 304 id. 413. In these cases there was no evidence of any notice having been given, and it was held that a failure to give notice is not an irregularity which is cured by the election or by subsequent legislation but such failure vitiates the election. The rule in this State has been announced in *National Products Co.* v. *DuPage County,* 314 Ill. 74, and *People* v. *Miller,* 314 id. 474. The former of these cases was a

tax-payer's suit to have a bond issue declared void because of insufficient notice of the election. The rule is in that case announced that where a great body of electors has actual notice of the time and place of holding an election and the question submitted, substantial compliance with the statute regarding notice is sufficient where no prejudice is shown. Where there is a failure to accurately follow the requirements of the statute with reference to giving notice, such will not invalidate the election unless it appears that the general result was prejudiced or changed from what it would have been had a strict compliance with the statute been had. In *People* v. *Miller, supra,* the rule is announced that duties prescribed by statute in relation to elections will be held to be directory if they do not, and mandatory if they do, affect the fairness of the election. To the same effect are *People* v. *Graham,* 267 Ill. 426, and *People* v. *Green,* 265 id. 39. See, also, McCrary on Elections, (4th ed.) p. 134.

While directory statutes are not intended to be disregarded, failure to fully comply with all of the requirements of a statute does not necessarily render an election thereunder void. (*People* v. *Miller, supra.*) If the statute specifically provides that failure by an officer to perform some duty will invalidate the election, the performance of that duty is a condition precedent to a valid election. (*People* v. *Miller, supra; People* v. *Graham, supra.*) It has long been the rule in this State that where a statute imposes duties upon officials connected with the holding of an election and by express language provides that the omission to perform same shall render the election void, all courts are bound to enforce that statute and pronounce the election void regardless of any consideration touching the policy of such a statute; but where the statute provides that certain facts or things shall be done within a particular time or in a particular manner and does not declare that their performance is essential to the validity of the election, then

they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election. (*People* v. *Crossley,* 261 Ill. 78; *Parker* v. *Orr,* 158 id. 609; *Blankinship* v. *Israel,* 132 id. 514.) Where an irregularity or a failure to follow the statute has not hindered anyone entitled to exercise the right of suffrage or rendered doubtful the evidence from which the result of the election is to be declared, such failure will not vitiate an election held. (*Blattner* v. *Dietz,* 311 Ill. 445; *People* v. *Green, supra;* Cooley's Const. Lim. (7th ed.) sec. 298.) In the case before us the only defect as to notice lay in the failure to publish the call for the election carrying notice of a polling place for the area of the district outside of the city of Chicago Heights. As we have stated, the publication was of an election throughout the district, and notices were posted in the territory of the district outside of the city. Of the 40 registered voters of that territory 22 voted. In the eighteen precincts of the city, having approximately 7500 registered voters, 3353 voted. There is no contention that notice was not sufficiently given so far as the city precincts are concerned. The result of the election shows that fifty-five per cent of the legal voters of the territory outside of the city participated in the election, while approximately forty-four per cent of the voters in the city participated therein. We are unable to see wherein the failure to strictly comply with the statute pertaining to notice has resulted in prejudice to any voter of the district. Certainly it could in nowise have changed the result, for had all the qualified voters in the territory outside the city voted against the proposition to issue bonds it still would have carried by over 500 votes. We are convinced that the great body of electors of the sanitary district had actual notice of the time and place of holding the election and that they were sufficiently advised as to the proposition on which they were voting. No prejudice is shown in this record by reason of any insufficiency in the

ordinance or notice. We are of the opinion, therefore, that the election held was a valid one.

Other contentions are raised in the briefs of counsel, consideration of which is not essential to a determination of the merits of this case.

Under the views herein expressed, the chancellor was right in dismissing the bill for want of equity, and the decree of the circuit court is affirmed.     *Decree affirmed.*