(No. 43781.—

FREDERIC SOLOMON *et al.*, Appellants, *vs.* NORTH SHORE SANITARY DISTRICT, Appellee.

*Opinion filed April 1, 1971.—Rehearing denied May 26, 1971.*

Jack M. Segel, of Chicago, for appellants.

Murray R. Conzelman, of Waukegan, and Calvin D. Trowbridge, C. Richard Johnson, and Linda R. Hirsh-

MAN, all of Chicago, (ISHAM, LINCOLN & BEALE, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The plaintiffs brought this action against the defendant, North Shore Sanitary District, to enjoin it from issuing bonds authorized by a special election, from expending funds derived from the sale of such bonds, and from utilizing any of such funds for constructing certain contemplated improvements to an existing treatment plant on Clavey Road. The circuit court of Lake County granted the defendant's motion for summary judgment, and the plaintiffs have appealed directly to this court, in that questions involving revenue and arising under the constitution are involved. Supreme Court Rule 302(a)(1)(2). Ill. Rev. Stat. 1969, ch. 110A, par. 302(a)(1)(2).

On March 14, 1968, the defendant district adopted an ordinance calling an election to authorize the issuance of $35,000,000 of bonds to finance a $59,000,000 project to construct additions and improvements to its sewage disposal facilities. The ordinance recited that the Board of Trustees of the district had considered the report of its engineers and had found it "necessary for the public health and in the best interests of the residents" of the district to construct certain enumerated additions and improvements. The ordinance separated these into three categories: sewage disposal facilities, pumping stations, and intercepting sewers and force mains. Under the first two descriptions, the ordinance briefly set forth the locations of the additions and nature of the new improvements. Under the intercepting sewer and force mains category, the ordinance specified fourteen improvements and additions to its sewage disposal facilities.

The ordinance called the election for May 4, 1968, and specified the form of notice to be given. The notice advised

the voters that the purpose of the election was to vote on the following proposition:

"Proposition to issue bonds of North Shore Sanitary District to the amount of Thirty-Five Million Dollars ($35,000,000).

"For the purpose of paying a portion of the cost of constructing additions and improvements to its sewage disposal facilities, including sewage treatment facilities, pumping stations, intercepting sewers and force mains, and acquiring lands, easements, rights of way and equipment and paying the engineering, surveying and other costs incidental thereto."

The ordinance further specified the form of the ballot, which set forth, as the proposition to be voted upon, the language quoted immediately above.

The proposition passed at the election held on May 4, 1968. In reliance thereon, the district, in 1969, issued and sold $8,000,000 of the authorized bonds. Also, in 1969, the district sought a special use permit from the city of Highland Park for the purpose of constructing a number of specified additions to the Clavey Road treatment plant in that city. The plaintiffs objected to this proposed expansion, and it is apparently this portion of the project which precipitated this action.

The plaintiffs filed their complaint in June of 1970. The complaint challenged the election held to authorize the issuance of the bonds in three general areas: (1) The sufficiency of the election documents, the ordinance, notice and ballot; (2) the constitutionality of the statute authorizing the issuance of the bonds; and (3) the authority of the defendant district to issue the bonds and to levy taxes to pay for them.

The plaintiffs contend that the election documents were void because the ordinance, notice and ballot did not describe with sufficient specificity the nature and location of

the improvements and project, and did not set forth the "duration of" or interest rates for the bonds. They urge that the statute is unconstitutional in that if the defendant may issue bonds and levy taxes thereunder, then the statute permits other than corporate authorities of municipal corporations to assess and collect taxes, and permits the issuance of bonds and the levying of taxes without adequate notice to the taxpayers pursuant to an incomplete and vague statute. Lastly, and related to a part of the foregoing, is the contention that the defendant is not a "corporate authority" authorized by the constitution to assess and levy taxes, because the manner in which the board has been selected was changed without the assent of the voters.

The question before us is whether the trial court correctly granted summary judgment for the defendant on the basis of the pleadings and the motion.

The first question pertains to the sufficiency of the election documents. The defendant does not dispute that the election was a special election (Ill. Rev. Stat. 1969, ch. 46, par. 1—3), and that there was no presumption favoring its validity. (*Bilek* v. *City of Chicago,* 396 Ill. 445, 465; *Southworth* v. *Board of Education,* 238 Ill. 190, 197.) It is essential to the validity of a special election that the mode prescribed for conducting it must be complied with in all material respects (*People ex rel. Carr* v. *Chicago Heights Terminal Railway Transfer Co.,* 319 Ill. 389, 391, 392), and this includes the giving of adequate notice. *Bilek* v. *City of Chicago,* 396 Ill. 445, 459-461 incl.; *Thatcher* v. *People ex rel. McCrea,* 93 Ill. 240, 244.

The defendant contends that the notice given here was adequate, and we agree. The only notice that is jurisdictional and required for a special election is that prescribed by statute. The notice need not contain more than that described by statute as mandatory. (*Bilek* v. *City of Chicago,* 396 Ill. 445, 455.) Section 9 of the Sanitary District Act of

1911 (Ill. Rev. Stat. 1969, ch. 42, par. 285) provides the mode of conducting the election for the issuance of bonds. It provides, in part:

"Whenever the board of trustees of such district desires to issue bonds hereunder they shall order an election to be held in such district upon the question. The notice of election shall state the amount of bonds to be issued and the polling places at which such election shall be held, and shall be posted in at least 5 public places at least 20 days prior to the election. Such election notice shall also be published in a newspaper published in said district at least 20 days prior to the election. The board of trustees shall appoint judges for such election, and the returns of such election shall be filed with the clerk of the board and be canvassed and the result ascertained by the board and entered upon the records of the district. If it shall appear that a majority of the voters voting at the election on the question shall have voted in favor of the issue of the bonds, the board of trustees shall order and direct the execution of the bonds for and on behalf of the district. All bonds issued hereunder shall mature in not exceeding 20 annual installments. The ballots at elections held under this section shall be in substantially the following form:

| Proposition to issue bonds of............district to the amount of................ dollars. | YES | |
|---|---|---|
| | NO | |

"

As to the notice, the statute requires only that it state the amount of bonds to be issued and the polling places at which the election shall be held. The notice contained these matters, and more. It complied with the statutory requirements and was sufficient and adequate notice to sustain the validity of the election.

In *Robbins* v. *Kadyk,* 312 Ill. 290, on which the plaintiffs rely, the court held that the maturity dates and interest rates of the bonds had to be set forth in the notice, but it did so because the statute in that case required that the notice of the election state the date of maturity of the bonds, the rate of interest and whether payable annually or semi-annually. The notice failed to recite the maturity dates of the bonds, the amount of the interest due thereon, and when payable, and the court held that the notice did not, thus, comply with the applicable statute. The ballot in the case at bar contained not only what was required by the statute, but more.

In *Smith* v. *Calhoun Community School Dist.,* 16 Ill.2d 328, where the question of the validity of a ballot used at an election to authorize the issuance of school bonds was before the court, we stated, at page 332, that where a special statute prescribes the form of the ballot there must be a substantial compliance with the statutory mandate or the election is void. The School Code prescribed that the ballot should clearly indicate the substance of the public measure to be voted upon. At pages 335 and 336, we indicated that this language did not require that the schedule of maturities of the bonds be listed on the ballot as an essential part of the substance of the public measure, and we held that when the ballot purported to list the amount and dates of all of the bond maturities, the omission of one did not vitiate the election.

Our holding in *Smith* is apropos here. The requirement of the statute in *Smith* that the substance of the public measure be set forth on the ballot was satisfied if the ballot gave a fair portrayal of the principal features of the proposition in words of plain meaning so that voters could understand it. The incorporation of information beyond that required by the statute would not vitiate the ballot so long as the additional information did not confuse or misinform the voters. (16 Ill.2d 328, 335, 336.) The relevant statute in

question here required only that the total amount of the bonds to be issued be set forth. The setting forth of the summary of the purpose of the bond issue cannot be said to have confused or misinformed the voters.

It is not essential to the notice, ballot, or ordinance that the maturity dates of the bonds be set forth absent a statutory mandate. (*Smith* v. *Calhoun Community Unit School Dist.*, 16 Ill.2d 328, 335; *People ex rel. The Gilman, Clinton and Springfield Railroad Co.* v. *Town of Harp*, 67 Ill. 62, 64.) In the case at bar, the statute in question provides that the bonds to be issued must mature within 20 years, and absent any provision in the election notice and ordinance to the contrary, the district may issue bonds within this statutory limit.

We believe that the ordinance, notice and ballot described the proposed project with sufficient particularity. Section 9 of the Sanitary District Act (Ill. Rev. Stat. 1969, ch. 42, par. 285) provides that "The corporation may borrow money for corporate purposes and may issue bonds therefor * * *." In *Fiedler* v. *Sanitary District of Bloom Township*, 359 Ill. 221, the bonds issued by the Sanitary District were challenged. We there held that the recitation in the ordinance that the district had caused a study to be made of the proper treatment and disposal of sewage in the district and had adopted the report of its engineers showing that in excess of $300,000 would be required for such purposes, that the revenues of the district were not sufficient to construct the necessary plants, and that it would be in the best interest of the district to borrow $300,000 for that purpose, was a sufficient statement of purpose. (359 Ill. 221, 224.) We have held that under the provisions of the Act in question, it is sufficient if the ordinance states that the bond proceeds are to be used for "corporate purposes"— that being the statutory language. *Lussem* v. *Sanitary District of Chicago*, 192 Ill. 404, 412, 413.

The election ordinance, in particular, and the notice and ballot sufficiently informed the voters of the nature of the proposed project. The election ordinance contained substantial detail. After reciting that the Board had considered the report of its engineers and as a result found it necessary and in the best interests of its residents to construct certain additions and improvements to its sewage disposal facilities to provide the services required, the ordinance specified that such additions to its present facilities would include:

"Sewage Treatment Facilities:

"Additions to the existing plants at Waukegan, North Chicago and Clavey Road in Highland Park, and a new plant in Gurnee, including necessary sludge disposal and outfall works.

"Sedimentation and chlorination facilities at Winthrop Harbor, Zion, Waukegan, North Chicago, Highwood and Clavey Road in Highland Park.

"Pumping Stations:

"Pumping stations at the existing plants in Waukegan, North Chicago, Lake Bluff, Lake Forest and Highland Park (Cary Avenue and Clavey Road); and at 22nd Street in North Chicago."

As to intercepting sewers and force mains, the ordinance listed fourteen additions and improvements. It further estimated a total cost of the project to be $59,297,000 and that it would be necessary to borrow $35,000,000 of this amount.

It should be apparent that if to specify only that the bond proceeds are to be used for "corporate purposes" is sufficient, the details contained in this ordinance are more than adequate. In a number of varying situations, we have held that it is not necessary to the validity of a bond issue that detailed plans of the project be set forth in the election documents. *Carstens* v. *Board of Education,* 27 Ill.2d 88, 90; *Smith* v. *Calhoun Community Unit School Dist.,* 16 Ill.2d 328, 335; *Bilek* v. *City of Chicago,* 396 Ill. 445, 455. Of

necessity, the degree of specificity set forth in the election notice must vary somewhat inversely with the magnitude of the project.

The plaintiffs further complain that the election sought the approval of a number of distinct propositions or projects on one ballot. Attempts to obtain the approval of several distinct and separate projects by one proposition on a ballot are void. (*Roll* v. *Carrollton Community Unit School Dist.,* 3 Ill.2d 148, 150-152 incl.; *People ex rel. Toman* v. *Chicago Great Western Railroad Co.,* 379 Ill. 594, 598; *Williams* v. *People ex rel. Wilson,* 132 Ill. 574, 585.) However, we do not agree that several distinct and unrelated projects were involved. The improvement program sought by the district consisted of one general expansion and improvement plan. It covered a substantial area and, of necessity, contemplated different improvements and additions at different localities to co-ordinate the entire project and sanitation system. The proposal pertained to integral parts of one project. The building of new sewage treatment plants, the additions to existing ones, and the construction of connecting sewers and mains are related and dependent and are components of one proposition, and, in the setting of this case, may be submitted as one proposition. *Roll* v. *Carrollton Community Unit School Dist.,* 3 Ill.2d 148, 151.

The plaintiffs also contend that the statute authorizing the bond issue is unconstitutional in that if the election documents to which we have referred are valid thereunder, the statute is too vague and indefinite in what it requires to be submitted to the voters. The constitution, however, does not even require that the issuance of such bonds be submitted to a vote. (*People ex rel. Adamowski* v. *Metropolitan Sanitary Dist. of Greater Chicago,* 14 Ill.2d 271, 282.) If the legislature deems it prudent to require that the issuance of certain bonds be submitted to the voters, we find it difficult to accept the argument that the constitution, which does not demand or order such submission, requires that more de-

tailed information be submitted to the voters than that specified by the legislature. It is clear that in order for a statute under which a special election is held to withstand a constitutional attack on the ground of being vague and uncertain, the statute need not specify every step to be taken in the election. If the statute is not specific or complete, then the provisions of the general Election Code will govern as to the omitted procedures. (*Natt* v. *Suburban Cook County Sanitarium Dist.*, 407 Ill. 436, 441, 445.) Here, however, the special statute sufficiently prescribes the procedures to be followed, as well as the information to be supplied the voters.

Years ago this court pointed out that statutes relating to special elections may contain both mandatory and directory provisions. Provisions are mandatory if they affect the fairness of the election: they are directory if they do not. If the requirements are such that a failure to follow them is apt to prejudice or change the result, they are mandatory. These provisions and requirements must be substantially followed or the election will be void. A failure to follow directory statutes will not necessarily render a special election void. *Fiedler* v. *Sanitary District of Bloom Township*, 359 Ill. 221, 226, 227.

The fault, if it can be called that, in the election documents in this case is that they went beyond the requirements of the statute. As to the bond maturity dates, the statute required that they mature within 20 years of their issuance and that is sufficient. In reference to the interest rates, it might have been helpful to set forth a maximum interest rate, but in reality this would have had little meaning or significance. The bonds were to be issued in a series over a period of years, and the interest rates would fluctuate—depending upon the varying conditions existing at the time. The details of the project were unnecessary. It was sufficient to outline in substance the general purpose of the bond issue so that the voters were apprised of the general nature of the proj-

ect. It would be unduly burdensome and imprudent to require that the election documents specify in great detail the project contemplated. In all likelihood the result would be more confusing to the voters than the procedure which was followed, and detailed specification could seriously jeopardize the power to make changes in the proposals or plans which might be required in the course of the construction. We find that the notice, ordinance and ballot were sufficient for the election, and neither they, nor the statutes under which they were adopted, were violative of any constitutional provisions.

The plaintiffs also contend that the Board of Trustees were not "corporate authorities" of municipal corporations empowered to levy taxes. Section 9 of article IX of the Illinois constitution limits the power of taxation for local improvements to corporate authorities of municipal corporations. This has been interpreted to mean only those officers who are either elected directly by the persons to be taxed, or appointed in some manner to which those persons have given their assent. (*People ex rel. Vermilion County Conservation Dist.* v. *Lenover,* 43 Ill.2d 209, 213; *McFarlane* v. *Hotz,* 401 Ill. 506, 512.) The Board of Trustees is not elected by the taxpayers. From the date of its incorporation in 1914, until 1964, the Board of Trustees was appointed by a panel composed of the county judge of Lake County and two judges of the circuit court residing in or closest to the sanitary district. This was provided by the governing statute. (Ill. Rev. Stat.1963, ch. 42, par. 279.) With the passage of the amendment to the Judicial Article of the Illinois constitution in 1964, the office of county judge was abolished and its jurisdiction was transferred to the circuit court. With the abolition of the office of county judge, the statute in question, like many others, was amended to provide that the Board of Trustees would be appointed thereafter by the "3 judges of the circuit court of the judicial district in which the sanitary district is located, resid-

ing in or closest to such district." Ill. Rev. Stat. 1969, ch. 42, par. 279.

The plaintiffs contend that the change in the statute of the persons entitled to appoint the Board of Trustees was made without the consent of the persons to be taxed and, thus, the board ceased to be a "corporate authority" having power to tax. In *Cornell* v. *People ex rel. Walsh,* 107 Ill. 372, it was held that when the legislature transferred the power to appoint certain park commissioners from the circuit judge of Cook County to the Governor of the State, without any vote by the people, the park commissioners lost their power to tax. It was so held because the people originally had given the assent to the appointment by the local judge, a public officer residing in their own county, and they had not assented to the transfer of this appointive power to the State officer—the Governor.

This case does not present the substantial change in the persons empowered to appoint the Board as in *Cornell.* There is no diminution of local control or transfer of the power of selection away from the local judiciary. Under the prior statute, the county judge, plus the two circuit judges residing in or nearest to the sanitary district, were empowered to appoint; under the new statute the three circuit judges residing in or nearest the district, are so empowered. We do not find this to be a momentous change or a removal from local control.

We take judicial notice of the composition of this judicial circuit. (Ill. Rev. Stat. 1969, ch. 51, par. 48b.) Initially, it was composed of four counties, including Boone and Winnebago. Now, it is composed of only Lake and Mc-Henry counties. This fact would tend to further guarantee local control. To suggest that there has been a change in the essential manner of the appointment of the Board to which the taxpayers have not assented is strained and unrealistic. (*People ex rel. Vermilion County Conservation Dist.* v. *Lenover,* 43 Ill.2d 209, 214.) The Board of Trustees has

not lost its power of taxation by reason of this change in the statute.

There are arguments on peripheral issues raised by the plaintiffs, but we do not consider it necessary to elucidate in detail our views on all of them. We have considered all issues on their merits and find them insufficient to set aside the results of this special election. In general, the issues of litigation are determined and governed by the pleadings of the parties. (*Burke* v. *Burke*, 12 Ill.2d 483, 487.) We note, parenthetically, that several of these issues were not raised in the plaintiffs' complaint. Matters not presented to the trial court may not be raised for the first time before this court. *Little Sister Coal Corp.* v. *Dawson*, 45 Ill.2d 342, 349; *Benson* v. *Isaacs*, 22 Ill.2d 606, 610.

Without belaboring the point or further unduly extending this opinion, we believe that the trial court was correct in this case in finding as a matter of law that the plaintiffs were barred by *laches* from pursuing their claim. The plaintiffs took no action until more than two years had elapsed following the election. The district had already issued and sold bonds totalling $8,000,000, and expenses had been incurred in furtherance of the project. There is no contention that the plaintiffs were not aware of, or did not have notice of, the special election. As we have indicated, there was nothing in the conduct of the special election to render it void. The delay of over two years before bringing this suit, coupled with the issuance and sale of $8,000,000 in bonds, and the expenditure of a part of these funds in furtherance of the project, result in the public interest requiring that the plaintiffs be barred by *laches*. *People* v. *Junior College Dist.*, 42 Ill.2d 136, 139; *People ex rel. Lindsey* v. *Board of Education*, 3 Ill.2d 159, 167.

The defendant could properly raise the question of *laches* by its motion for summary judgment. This put the plaintiffs on notice of this defense and permitted them to answer and

contest it both on a legal and factual basis if they so desired. See: *Holland* v. *Richards*, 4 Ill.2d 570, 572.

The trial court properly disposed of this case by summary judgment. After filing its answer, the defendant filed its motion and supporting affidavit. No counteraffidavits were filed by the plaintiffs. The essential factual matters were not in dispute, *e.g.,* the contents of the election documents and the structure of the Board of Trustees. Under our interpretation of what is required by law in such documents, there remained no genuine issue as to any material fact, and the defendant was entitled to a judgment or decree as a matter of law. The question was the legal and constitutional sufficiency of these documents under the statutes, and the constitutionality of the structure of the Board of Trustees. This case was appropriately decided by summary judgment. (*Allen* v. *Meyer,* 14 Ill.2d 284, 292.) Consequently, the judgment of the circuit court is affirmed.

*Judgment affirmed.*