[No. 20960. Department Two. March 27, 1928.]

J. GEORGE *et al.,* Respondents, v. THE CITY OF ANACORTES *et al.,* Appellants.[1]

[1] MUNICIPAL CORPORATIONS (523)—WATER WORKS—ISSUANCE OF BONDS—CHANGE OF PLANS. Under Rem. Comp. Stat., § 9489, requiring the estimated cost of public improvements to be submitted to popular vote, a proposition for water mains in a certain street cannot be changed after vote thereon, and part of the funds used to construct a main on another street where the item was more than a mere detail of the improvement.

[2] MUNICIPAL CORPORATIONS (118, 124)—WATER MAINS—LOCATION BY POPULAR VOTE—RIGHT TO CHANGE PLANS. After the ratification by popular vote of a proposition for the specified location of water mains, the municipality cannot relocate a portion of such mains without resubmitting such proposal to another vote.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered July 25, 1927, upon findings in favor of the plaintiffs, in an action for an injunction, tried to the court. Affirmed.

*Ben Driftmier,* for appellants.

*R. V. Welts,* for respondents.

ASKREN, J.—The city of Anacortes, being desirous of improving its municipally owned water system, adopted an ordinance which provided, among other

[1]Reported in 265 Pac. 477.

things, that "said city shall construct a 10-inch wooden main on 20th street to connect the present 16-inch main on J avenue with the present 8-inch main on R avenue: . . . ." The cost of the projected improvement being approximately $50,000, it was decided to issue bonds to pay for the same, and an election was held to secure authority of the voters for the improvement and sale of the bonds. The notice of election and the printed ballot used read as follows:

"Shall the City of Anacortes, Washington, make additions and betterments to its existing municipal water works system as follows, by constructing a 10-inch wooden main on 20th street to connect the present 16-inch main on J avenue with the present 8-inch main on R avenue, by installing an electric pump at the present location of the dam on Deutch Ravine to pump water therefrom to the present filter, by installing an 8-inch wooden pipe line on Dober's Road to connect the present Heart Lake pipe line with the present filter; by installing two additional filter units of 500,-000 gallons per day each; by installing 500 additional water meters, and by acquiring all necessary easements, rights of way and all other property necessary in connection therewith."

The cost of the 10-inch main on 20th street was estimated to be about $5,700. After the voters approved the project, work was begun. However, no main was laid on 20th street as provided in the ordinance. Instead, work was commenced on the laying of a 10-inch main in 17th street, which is about 900 feet distant from 20th. This work was done without any vote being taken by the council, but it appears to have been the result of the matter being taken up with them individually.

When it became apparent that no main was to be laid on 20th street and that the main in 17th street, although not provided for in the plan of the improvement, was to be paid for out of the proceeds of the

sale of the bonds issued, the plaintiffs brought this action to restrain the city from using any of the funds derived from the sale of the bonds for the construction of a main on 17th street, and for an order requiring the city to construct the main on 20th street as specified in the ordinance approved by the voters.

Upon hearing, the court issued its restraining order substantially in the form asked for in the complaint, and this appeal followed.

[1]  The appeal presents two questions for decision: The first is, did the court err in restraining the city from using the funds voted to construct a main on 20th street to pay for a main on 17th street? Appellant urges that the change of the location of the main is but a minor incident in the progress of the work, and that, therefore, there has been no change in the plan provided by ordinance and approved by the people. But we can hardly say that the construction of an item costing $5,700 is but an incident in a project costing less than $50,000. The council evidently considered this matter more than a mere detail, for it set out just what this improvement was to be. The statute requires that a distinct plan of improvement must be set out. Rem. Comp. Stat., § 9489 [P. C. § 1215], provides in part:

"Whenever the city council or other corporate authorities of any such city or town shall deem it advisable that the city or town of which they are officers shall purchase, acquire or construct any public utility mentioned in section 9488 hereof or make any additions and betterments thereto or extensions thereof, the common council or other corporate authorities shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof as near as may be, and the same shall be submitted for ratification or rejection to the qualified voters of said city at the general or special election,  .  .  ."

Just how far into detail such a plan must go is, of course, governed by no hard and fast rules. But we think, an item as large as this being specifically set out, that it would violate the spirit of the statute to require its approval by the voters and then permit it to be changed at the caprice of the city's officers. *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998.

[2] The next question presented is: Should the city be required to construct the main on 20th street? The argument upon this point is that the main on 17th street will take the place of the 20th street main, and that to lay the 20th street main is to do an unnecessary thing. It is said that the city will pay for the 17th street main out of the general fund and abandon the main on 20th street, and that no one will be injured. But we think this mistakes the project as being one of several items, each standing by itself, rather than one project composed of several items related to each other and endorsed and approved as a whole by the voters. There is no way of knowing just what portion of the project appealed to the voters. It may be, that the laying of the main on 20th street was considered of primary importance to a great many, and if that item had not been included they would have refused endorsement of the project. Appellant, relying upon *Broad v. Spokane,* 59 Wash. 268, 109 Pac. 1014, where this court upheld the city of Spokane in its abandonment of a contract for local improvement, claims that the city has a right to abandon a project, even after approval by the voters. To this general proposition assent may be given. Many situations might arise after approval that would make it unwise for the city to proceed with a project, and abandonment might be a proper action to take. But that is far from saying that, when a plan has been

presented to the voters and approved by them, portions of the plan may be abandoned at the will of the city officers and the balance proceeded with. The record here presents no change of situation requiring a departure from the plan, lack of feasibility, or any reason other than a desire to substitute a different plan than that submitted to the people, and we think the court correctly decided the issues in favor of the respondents.

Affirmed.

FULLERTON, TOLMAN, HOLCOMB, and MAIN, JJ., concur.