[No. 37660.    Department One.    October 14, 1965.]

S. J. O'BYRNE, *Respondent,* v. THE CITY OF SPOKANE,
*Appellant.*\*

*John P. Tracy, Jr., Howard A. Anderson, LeRoy C. Kinnie, Dudley L. Wilson,* and *Don R. Shaw, Jr.,* for appellant.

*Murphy & Merryman,* by *Patrick H. Murphy,* for respondent.

BARNETT, J.†—The facts in this case are concisely set out in the memorandum opinion of the trial court from which we quote:

Sometime previous to December 19, 1961, Spokane School District No. 81 had acquired some forty-five to fifty acres of property, more or less rectangular in shape, in the northeast section of the City of Spokane, which area was bounded on the north by 37th Avenue, on the south by 44th Avenue, on the west by Regal Street, and on the east by Thor Street extended. Approaching this site from the north were three streets which were undedicated and unimproved, and which ended at 37th,

\*Reported in 406 P.2d 595.

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

namely, Fiske, Ray and Thor in that order from west to east. Regal, the westerly boundary, was improved from 37th through to 44th, but the other three streets were not. Thor is the easterly boundary of the acreage.

By December 19, 1961, School District No. 81 had completed plans for a proposed ultimate site development within this acreage . . . wherein such property would be used for a campus style high school. By January, 1962, this school was under construction. January 22, 1962, the City Council for the City of Spokane, Washington, passed Ordinance No. C17032 . . . which was an Ordinance providing for the construction of improvements to the street system of the City of Spokane, for the issuance of bonds in the amount of $2,962,000.00 for payment for the costs thereof, and providing for the holding of a special election to authorize payment of said bonds and interest by annual levies in excess of the tax limitation permitted by the Constitution and statutes. The Ordinance provided for fourteen different items of street improvement scattered throughout the city . . . . Included in Item 14 was a north-south freeway running south on Thor Street from the east-west freeway at 4th Avenue, thence diagonally on Ray Street and due south on Ray Street for thirty blocks from 14th to 44th, which is the city limits. It was contemplated that the north-south freeway would continue outside of the city limits from 44th and connect with the Palouse Highway. It will thus be seen that if this freeway were constructed, it would intersect the site of the Ferris High School, because Ray Street terminated at 37th, which was the northerly boundary of the high school area.

The Bond Issue was approved by the people on March 13, 1962. The Ordinance which was approved by the people stated in part:

"The foregoing improvements shall be made in accordance with preliminary maps, plans and specifications prepared under the direction of the City Engineer of said city, and on file in the office of said Engineer, which said preliminary maps, plans and specifications are hereby approved and adopted."

Section 4 provides:

"If at said election hereby ordered the said proposition thus submitted shall be approved and ratified by the people . . . said improvement shall be made as provided herein . . . ."

A preliminary map, which was on file in the office of the City Engineer, and which was included by reference in the Ordinance adopted by the voters, indicated that the north-south freeway would proceed due south on Ray Street, through the Ferris High School site. . . . Thus Ray Street would be extended and improved from 37th to 44th.

Construction has already begun under Items 2 and 3 of the Ordinance, which comprises a total of $896,000.00 of the $2,962,000.00 Bond Issue. Construction has not begun on the Thor-Ray Freeway, as it approaches the Ferris High School site.

It became evident that there was some opposition, in particular by members of the School Board, to the freeway, which would proceed due south on Ray Street through the Ferris High School site. Previous to the adoption of the Ordinance, the objections of those interested in the Ferris High School site were known and communicated to, and considered by the City Council. Nevertheless, the City Council adopted the Ordinance as submitted.

After the adoption of the Ordinance, there was further activity. Various plans were considered, such as swinging the freeway away from Ray Street at 37th two blocks to the west, along Regal Street, or swinging it six hundred sixty feet east to proceed along Thor Street.

[T]he City Council after various contacts with the School District, had decided sometime after the election of March 22, 1962, to reroute the freeway, beginning at 37th Street and rather than proceed directly through on Ray, intended to construct the freeway to the east on Thor.

[U]nless restrained by this action, the extension of the freeway from 37th to 44th on Ray will be abandoned and the freeway will be constructed from 37th to 44th on Thor Street, six hundred sixty feet to the east of the route set out in the Ordinance; said new or alternate route would be 2,911 feet long or 55.13% of a mile. This would be done without submitting the same to the people of the City of Spokane for a popular vote.

Section 89 of Art. 9 of the Spokane City Charter states:

No ordinance which has been passed by the Council upon a petition, or adopted by popular vote, under the provisions of this article, shall be repealed or amended, except by popular vote.

The trial judge made findings of fact substantially as above. The court found that the proposed change would be beneficial to the city. Attention is called to finding of fact No. 7:

Defendant admits that the proposed change is a departure from the ordinance which was approved by the vote of the people, but contends that such change is a minor one and is a matter of detail and may be made at the discretion of the City Council. The Court finds, that although the proposed deviation in the route would be an act of sound discretion on the part of the City Council in view of benefits to be obtained for the school, in that it would be to the interest of the children, the school, and plans for the future to have additional playground area, such a change is not a minor change but in fact constitutes a substantial, major and radical variance from the ordinance. Such a change would necessarily include, amongst other things less significant, the following: 1. A different channelization of traffic at 37th and Ray. 2. An improvement in the form of a four lane paved thoroughfare on Thor Street for a distance of 2911 feet from 37th to 44th. 3. The abandonment of a four lane paved thoroughfare on Ray Street from 37th to 44th, a distance of 2738 feet, which represents an expenditure of $136,480.00, and involves 32.70% of the costs of the construction to be done under Item No. 14 of the ordinance. 4. The connection of Ray Street at 44th to the Palouse Highway would be abandoned and in its stead a connection would be made from Thor Street to the Palouse Highway. This would also alter the channelization plan at 44th Avenue.

In conclusion of law No. 1, the court stated:

The proposed deviation set forth in the Findings of Fact constitutes a major deviation from the ordinance approved by the people, and is thus not within the discretion of the City Council.

The court enjoined the city council from rerouting the thoroughfare as it proposed to do and rendered judgment for respondent. From this disposition the city of Spokane appeals.

Counsel agree in their briefs on the main issue before the court. "We submit that the main issue before the court

is whether or not the usage of the alternate Thor Street route would constitute a major radical deviation . . . ."

■ The general tenor of appellant's argument is that there is discretion in the city council to approve a rerouting. The appellant cites a Texas case, *Clark v. Greer,* 232 S.W. 2d 876 (Tex. Civ. App. 1950), wherein the court states: "It is within the discretion of the City Council of the City of Denison to say that such rerouting is an improvement to the avenues involved; . . . ."

However, we have held just the opposite. In *Hayes v. Seattle,* 120 Wash. 372, 375, 207 Pac. 607 (1922), we held:

> Appellant quotes from a number of our cases where we have held that we will not, in the absence of fraud or arbitrary action, review proceedings taken by municipal authorities under a discretion lawfully given. *We are not here reviewing a discretionary action* which the city council has a right to exercise; *we are holding that it has no power to exercise the discretion it is here undertaking to exercise—it is not a question of abuse of discretion, but one of power.* (Italics ours.)

In *State ex rel. Traeger v. Carleton,* 242 Minn. 296, 299, 64 N.W.2d 776 (1954), cited with approval in *Davis v. Seattle,* 56 Wn.2d 785, 355 P.2d 354 (1960), the general rule is stated as follows:

> It is probably true that the city may make minor changes in the plans but may not radically alter them so as to construct an entirely different system from that voted upon by the people. [Citing cases.]
>
> Their . . . authority is conferred by the vote of the people. *They have no discretionary power to change the authority so granted,* except possibly in minor details which do not affect the nature of the plan voted upon. (Italics ours.)

Appellant relies on *Davis v. Seattle, supra,* for the proposition that, given good and sufficient reason for a change in route, a deviation from the bond issue may be allowed. That issue was never decided in *Davis.* In fact, the court expressly refrained from doing so because the issue was not necessary to the decision. Actually what was said by the majority opinion was, page 790:

In *George v. Anacortes* (1928), 147 Wash. 242, 265 Pac. 477, where, after the proposition placed on the ballot stated that a water main would be constructed in one street, and the city thereafter undertook to place it in another street, we enjoined the deviation, saying:

". . . The record here presents no change of situation requiring a departure from the plan, lack of feasibility, or any reason other than a desire to substitute a different plan than that submitted to the people, . . ."

So, perhaps it could be that the rule against deviation is not an absolute one; that reasonable exceptions might be made; that ample authority may exist supporting this view. Actually, it is not necessary for us to decide this question, and we refrain from doing so.

Clearly the inference from *Davis* is that if minor changes in a case, not then before the court, were to come up on appeal, the court would examine the rule.

Nor is the present case one of minor changes.

The project involved here was not one of several items each by itself, but one project composed of several items related to each other and endorsed and approved by the voters as a whole. The trial court found, and we agree, that the "proposed deviation . . . constitutes a major deviation from the ordinance approved by the people, and is thus not within the discretion of the City Council."

In any event, whether or not we had agreed with the trial court, there was substantial evidence in the record to support its findings and it will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Judgment affirmed.

ROSELLINI, C. J., HILL, OTT, and HUNTER, JJ., concur.