[No. 51043–1.   En Banc.   June 6, 1985.]

KING COUNTY, *Respondent,* v. THE TAXPAYERS
OF KING COUNTY, *Appellants.*

*Schweppe, Krug & Tausend, P.S.,* by *David G. Knibb* and *James Thayer,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Stephen A. Sewell, Senior Deputy,* for respondent.

UTTER, J.—Appellants, Taxpayers of King County, appeal a summary judgment in favor of King County holding valid a bond sale authorized by King County ordinances 4341 and 6808. We affirm the summary judgment as to all issues presented.

In 1979, the citizens of King County approved ordinance 4341, a measure authorizing issuance of $50 million of King County unlimited tax levy general obligation bonds to provide funds to purchase development rights to protect and preserve farm and open space lands. An initial attempt to sell 20–year obligation bonds at a net effective interest rate of 8.4436 percent was blocked by a lawsuit. A second suit challenged the constitutionality of the preservation program itself. Both issues were resolved in *Louthan v. King Cy.,* 94 Wn.2d 422, 617 P.2d 977 (1980) wherein this court held the ordinance constitutional, but further held that sale of bonds bearing a maximum effective interest rate greater

than the 8 percent limit in effect when the voters originally approved the bonds required new voter approval. After yet another suit, the King County Council sold $15 million of limited tax levy "councilmanic" bonds to provide cash to purchase development rights in prime "Priority 1" farmland.

Subsequently, the King County Council enacted ordinance 6808, authorizing the issuance and sale of $35 million in general obligation bonds. These bonds are to be sold under the authority of the voters' 1979 approval of ordinance 4341, requiring the sale to be completed by November 1985. To ensure its ability to sell the bonds, the County filed this declaratory judgment action pursuant to RCW 7.24 and 7.25. A taxpayer representative was appointed, discovery was done, and based on agreed facts and exhibits, cross motions for summary judgment were filed.

The trial court held that the County "has full right to issue and sell" the bonds. It based this ruling on four conclusions. First, it held that preelection representations made by proponents of the ballot measure which do not coincide with the clear and unambiguous language of the ordinance are not binding. Second, it held that King County did not unconstitutionally delegate legislative powers to bond bidders by presenting a choice of 11 maturity schedules while retaining the right to select or reject any or all bids. Third, it held that the bonds do not violate the 8 percent interest rate set by former RCW 36.67.040, where the maximum effective rate of interest to be paid referenced in RCW 39.44.030, repealed by Laws of 1984, ch. 186, § 70, will not exceed 8 percent, although some individual bond coupons may exceed 8 percent. Finally, it held that King County may impose a "lowest debt service" requirement on the sale of bonds in the absence of statutory authorization or prohibition. The Taxpayers appeal each holding.

I

During the course of the campaign to pass ordinance 4341, numerous proponents of the measure made statements about the effects of the proposed ordinance on the taxpayers. Some said that the cost of the bonds would be less than $10 annually for a taxpayer who owned a home assessed at $50,000. These figures were based on the sale of 30–year bonds at about 5.9 percent. Taxpayers received personal appeal letters from Charles Royer, Mayor of Seattle, and John Spellman, King County Executive. Bernice Stern, King County Council, wrote an article about the ordinance published in View of Puget Sound magazine. Those communications furthered the estimated cost to taxpayers of less than $10 a year for $50,000 appraised value.

Taxpayers contend that the widely disseminated representations by public persons are determinative of the voters' intent and should be used as extrinsic aids to construe ambiguous legislation. They argue that the voters relied on those statements and now the County is bound to sell 30–year bonds as promised. The County contends that, based on the plain language of the ordinance which the voters approved, there is no ambiguity.

Ordinance 4341, section 13, provides in pertinent part:

The Bonds . . . shall mature serially commencing in from two to five years from the date of issue of each series and *maturing in a period which may be less than but shall not exceed thirty years from the date of issue of each series,* all as hereafter authorized by the Council and as provided by law.

(Italics ours.) The ballot measure presented the issue to the voters as follows:

Shall King County, for the purpose of acquiring and preserving voluntarily offered farm and open space lands in the county, issue its general obligation bonds in the principal amount not to exceed $50,000,000 in one or more series over a period of up to six years, to mature serially commencing in from two to five years and *maturing in not to exceed 30 years from date of issue* of each series . . .

(Italics ours.)

■ The primary objective in interpreting a statute "'is to ascertain and give effect to the intent of the legislature.'" *Janovich v. Herron,* 91 Wn.2d 767, 771, 592 P.2d 1096 (1979). In judicial interpretation of statutes, the first rule is "the court should assume that the legislature means exactly what it says. Plain words do not require construction." *Snohomish v. Joslin,* 9 Wn. App. 495, 498, 513 P.2d 293 (1973). This court will not construe unambiguous language. *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978). The intent of the legislative body was not some vocal proponents of the program but the language of the legislation itself. *Department of Transp. v. State Employees' Ins. Bd.,* 97 Wn.2d 454, 458, 645 P.2d 1076 (1982).

Although not required to do so since no statute so provided, the King County Council nevertheless set maturity dates for voter approval. *Redondo Beach v. Taxpayers,* 54 Cal. 2d 126, 352 P.2d 170, 176, 5 Cal. Rptr. 10 (1960); *Solomon v. North Shore Sanitary Dist.,* 48 Ill. 2d 309, 269 N.E.2d 457 (1971). Ordinance 4341 is unambiguous, setting an upper limit of 30 years and a lower limit of 2 years for maturity of the bonds sold. The ordinance further provides "[t]he exact date, form, terms, redemption options and maturities of each series of the Bonds shall be as hereafter fixed by ordinance of the Council." Passage of ordinance 6808 fulfilled that promise. Where there is no ambiguity there is no need for extrinsic evidence to interpret it.

■ Taxpayers urge that the statements of certain persons, although not fraudulent, were misleading to the public. Yet, misleading campaign statements by proponents of ballot measures cannot be used to void elections. *Sooner State Water, Inc. v. Allen,* 396 P.2d 654, 656 (Okla. 1964).

Neither is it sufficient that such misrepresentations be made by some city official speaking or acting in his individual capacity, and when such misrepresentations constitute no part of the official proceedings. It is beyond the realm of reason that the validity of bond issues, regularly

adopted by a vote of the people, should depend upon the character of campaign speech or advertisement initiated by some individual or group acting in an unofficial capacity.

*Allen,* at 656. We find this reasoning persuasive.

Taxpayers cite several cases for the proposition that a governmental entity cannot depart substantially from programs set out in an ordinance approved by voters. *O'Byrne v. Spokane,* 67 Wn.2d 132, 406 P.2d 595 (1965); *George v. Anacortes,* 147 Wash. 242, 265 P. 477 (1928). However, ordinance 6808 does not depart radically or even minimally from ordinance 4341. Rather, it implements the sale of bonds to mature in no more than 30 years, as approved by the voters upon adoption of ordinance 4341.

Finally, Taxpayers cite several cases which hold that when voters approve a resolution which reserves some issues for later decision, campaign representations known and likely relied on by the voters may amount to a binding exercise of that reserved discretion before the election. *Black v. Strength,* 112 Tex. 188, 246 S.W. 79 (1922); *Moore v. Coffman,* 109 Tex. 93, 200 S.W. 374 (1918). Reliance on those cases is misplaced in this instance because they involved official statements by governmental officials or bodies acting in their official capacities. Here, the statements challenged were made by officials in their personal capacities during a highly publicized campaign where voters had an opportunity to hear both sides of the issue debated. Those representations were not official statements of a governmental agency.

Voters had unambiguous language before them when they voted. A majority approved ordinance 4341, giving the King County Council the authority to sell bonds which would mature in no more than 30 years from date of issue. Ordinance 6808 implements precisely the language of ordinance 4341 by authorizing the sale of the bonds in maturity terms ranging from 5 to 19 years. Nonofficial representations made by proponents are neither binding on the Council nor are they, even if misleading, sufficient to over-

turn the election.

## II

Taxpayers challenge ordinance 6808 as an impermissible delegation of legislative power because it permits bidders to choose from among 11 enumerated maturity schedules. They contend that choosing maturity dates is a legislative function since it determines which generation will most benefit from the expenditure and therefore which should pay. The County claims there is no delegation.

Both RCW 39.44.030 and ordinance 4341, section 13, require the bonds be sold at a public sale, where the public is invited and given an opportunity to bid. Such requirements should be construed with the primary purpose of best advancing the public interest. 10 E. McQuillin, *Municipal Corporations* § 29.29 (3d ed. 1966); *accord, Savage v. State,* 75 Wn.2d 618, 621, 453 P.2d 613 (1969); *Miller v. State,* 73 Wn.2d 790, 793, 440 P.2d 840 (1968). In addition to preventing fraud, collusion, and favoritism, public bidding benefits the property holders and taxpayers. Giving bidders a variety of maturity schedules on which to bid is a cost effective and efficient way for the County to sell the bonds since it permits the County to select the best bid for its purposes without engaging in costly and time consuming rebidding procedures. Offering several maturity schedules at one time effectuates the purposes of the public bidding requirements.

The County selected the 11 maturity options it is placing before the bidders. Taxpayers claim that while such a scheme is permissible for sale of refund bonds, it is impermissible for the sale of original bond issues. They give no support for this proposition and, in fact, RCW 39.44.010 and .030, in effect at the time of adoption of ordinance 4341, prescribed the same requirements for public sale of all general obligation bonds, "including refunding bonds." Presence of the phrase "including refunding bonds" makes it clear that the Legislature intended to permit an offer of optional maturity schedules for the sale of original bond

issues.

Cases relied on by Taxpayers differ significantly from the case before the court. Those cases involved giving private groups carte blanche authority with no guidelines. *See, e.g., United Chiropractors of Wash., Inc. v. State,* 90 Wn.2d 1, 578 P.2d 38 (1978); *Woodson v. State,* 95 Wn.2d 257, 623 P.2d 683 (1980). For example, under the statutory scheme examined in *United Chiropractors,* private associations had the power to limit gubernatorial appointments to a state board since the Governor had to choose from names submitted by chiropractic organizations. By contrast, ordinance 6808 gives power to limit choices to the government. Bidders do not have discretion to choose any maturity date or interest rate they desire. King County retains control of and authority over the interest rates and the bidding by selecting the maturity dates on which potential buyers may bid. Further, the County may reject any bid, thus retaining authority to choose the bid most beneficial to the public. The scheme is no different than any public bid situation and comports with statutory requirements as they existed at adoption of the ordinance. Taxpayers have failed to prove an impermissible delegation.

### III

Ordinance 6808 and the notice of sale provide that the bonds shall bear interest at the lowest net effective interest rate of 8 percent or less. The effective rate of interest is a weighted average of coupon rates over the life of the bonds, a function of total interest cost and the number of bond years. The ordinance and notice of sale permit bids at different interest rates so long as the same interest rate applies to all bonds maturing on the same date. Under this scheme, the coupon rates of some of the bonds may exceed 8 percent. Taxpayers argue the County may not sell any bond with a coupon rate exceeding 8 percent.

The parties agree that construction of RCW 36.67.040, Laws of 1969, ch. 142, § 5 (hereinafter RCW 36.67.040 (1969)) and RCW 39.44.030, both in effect in 1979 when the

voters approved ordinance 4341 authorizing the sale of the bonds, control determination of the issue. *See also Louthan v. King Cy.*, 94 Wn.2d 422, 617 P.2d 977 (1980). RCW 39.44.030 deals with the same subject as RCW 36.67.040 (1969), sale of public bonds and terms of sale of the bonds. Because the statutes relate to the same thing or class, they are in pari materia and must be harmonized if possible. *Snohomish Cy. PUD 1 v. Broadview Television Co.*, 91 Wn.2d 3, 8, 586 P.2d 851 (1978).

■ RCW 36.67.040 (1969) provided: "The bonds shall . . . bear interest at a rate of not exceeding eight percent per year, payable semiannually, with coupons attached for each interest payment." RCW 39.44.030 provides in part:

> Before any general obligation bonds issued by any county . . . shall be offered for sale the governing body issuing such bonds shall designate the *maximum effective rate of interest* said bonds shall bear, which shall not be in excess of that allowed by law. . . . [W]hen a vote of the electors shall have been taken on the question of the issuance of such bonds and the proposition submitted to the electors *shall have specified the maximum effective rate of interest* to be borne by said bonds, no increase of such *maximum effective rate of interest* shall be made by the governing body. All such bonds, including refunding bonds, shall be sold at public sale, . . . The notice [calling for bids] shall specify the maturity schedule and the *maximum effective rate of interest* such bonds shall bear, and shall require bidders to submit a bid specifying (a) the lowest rate or rates of interest and premium, if any, above par, at which such bidder will purchase said bonds; or (b) the lowest rate or rates of interest at which the bidder will purchase such bonds at par. The bonds shall be sold to the bidder offering to purchase the same at the lowest net interest cost to the issuer over the life thereof, subject to the right of the governing body to reject any and all bids.

(Italics ours.) The term "maximum effective rate" appears several times and must be given meaning. "Principles of statutory construction require that we give effect to all of the language used." *In re Marriage of Timmons,* 94 Wn.2d 594, 600, 617 P.2d 1032 (1980). Reading the two statutes

together, it is apparent that the Legislature intended to require the bond seller to set a maximum effective rate not to exceed the rate set elsewhere by statute; "governing body issuing such bonds shall designate the maximum *effective* rate of interest said bonds shall bear, which shall not be in excess of that allowed by law." (Italics ours.) RCW 39.44-.030. RCW 36.67.040 (1969) set the rate at 8 percent.

This analysis is consistent with our earlier construction of the same statutes in *Louthan v. King Cy., supra* at 422, wherein we found that at the time voters approved ordinance 4341, the effective maximum interest rate of 8 percent was established by RCW 36.67.040 (1969). We therefore held that a sale of bonds at an effective interest rate of 8.4436 percent was impermissible without further voter authorization since it was greater than the maximum effective rate.

Finally, variations of individual coupon rates were also permissible when the voters approved ordinance 4341. Award is to be made to bidders offering to purchase bonds at "the lowest net interest cost to the issuer over the life thereof . . ." RCW 39.44.030. Since the effective interest rate is a function of total interest cost divided by the number of bond years, it is clear that no single coupon rate is determinative. Further confirmation can be found in RCW 39.44.010 which provides in part:

> The provisions of this section shall not constitute any limitation on the number of coupon rates of interest or the amount of difference between the highest and lowest interest rates that may be specified by bidders: *Provided,* That such governing body may, in its discretion, in the sale proceedings, limit the number of interest rates and the amount of difference between the highest and lowest rates bid.

Reading the two provisions together, we conclude that total cost and the effective rate of interest are the limiting factors on cost to the taxpayers. The maximum effective rate provided for in RCW 39.44.030 is a weighted average of the various coupon rates over the life of the bonds. So long

as it is below the legal limit of 8 percent it is not fatal to the sale if particular coupon rates are higher.

IV

The notice of sale prescribed by ordinance 6808 provides that bids be evaluated and bonds awarded on the basis of the lowest net interest cost for the longest maturity "which results in the lowest debt service for each maturity year." Debt service means the total principal and interest paid to retire bonds. For this provision to become operative, the interest rate bid on a short schedule would have to be substantially less than the rate bid on the longer schedule.

█ RCW 39.44.030 provides that general obligation bonds (such as farmland bonds) are to be awarded to the bidder offering the lowest net interest cost over the life of the bonds. However, it is conceivable that the lowest net interest cost at the longest maturity could result in the County paying more debt service for more years. The "lowest debt service" language of ordinance 6808 ensures that taxpayers pay less for fewer years rather than automatically selecting the bid with the lowest net interest cost and the longest term.

Although the parties agree that no state statute or constitutional provision expressly authorizes, prohibits, or refers to lowest debt service, Taxpayers challenge the County's authority to add this requirement to the bond sales after voter approval of the bond issue. They contend that *Chemical Bank v. WPPSS*, 99 Wn.2d 772, 666 P.2d 329 (1983) holds that a charter municipality's home rule authority is narrow and that, absent a specific delegation of authority from the Legislature, the County has no power to act where the State's interest is paramount to or joint with that of the municipal corporation. Since the County added a bid qualification after approval by the voters, it exceeded its authority with regard to both the voters and the State Legislature.

While it is true the State has expressed an interest in farmlands preservation, that interest does not preclude the

County's actions here. Establishment of the "lowest debt service" requirement is consistent with and furthers the important state interest of RCW 39.44.030 to protect the taxpayers and ensure that they pay as little as possible for the use of their money. *Savage v. State,* 75 Wn.2d 618, 621, 453 P.2d 613 (1969); 10 E. McQuillin, *Municipal Corporations* § 29.29, at 321 (3d ed. 1966). Because the language is consistent with other bid award language of RCW 39.44.030 in that it ensures the lowest total interest cost, it meets the test for exercise of municipal authority set forth in *Chemical Bank.* It neither conflicts with any statute or constitutional provision, nor is it an exercise of unauthorized municipal power. In reality, the provision promotes the purposes underlying the statutory bid provisions without circumscribing bidding requirements.

## V

Taxpayers seek attorney fees pursuant to RCW 7.25.020 to be paid by the County. We remand to the trial court to determine the appropriate amount to award for services and expenses since the trial court award of interim fees and costs.

DOLLIVER, C.J., and BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

GOODLOE, J. (concurring in part, dissenting in part)—I concur with the majority's dispositions of the preelection representations, delegation of power, and lowest debt service requirement issues. I dissent from the majority's holding that the bonds may bear a maximum, effective (average) interest rate of 8 percent. I would hold that the interest paid in any 1 year cannot exceed 8 percent.

Two statutes, RCW 36.67.040 and RCW 39.44.030, in effect when the bond issue was authorized by the voters, affect the bonds and must be construed.

In 1979, RCW 36.67.040 stated:

The bonds shall bear the date of issue, shall be made payable to the bearer and bear interest at a rate of not

exceeding eight percent *per year,* payable semiannually, with coupons attached for each interest payment.

(Italics mine.)

In 1979, RCW 39.44.030 provided, in pertinent part:

Before any general obligation bonds issued by any county . . . shall be offered for sale the governing body issuing such bonds shall designate the *maximum effective rate of interest* said bonds shall bear, *which shall not be in excess of that allowed by law.* . . .

(Italics mine.)

RCW 36.67.040 is specific, clear, and unambiguous. It provides the amount of interest allowed by law; the amount cannot exceed 8 percent per year. RCW 36.67.040 can be harmonized with RCW 39.44.030 without this court adding to RCW 36.67.040 by its interpretation the language "an effective rate of" before "8 percent per year". This court should not judicially amend statutes.

The Legislature added the word "effective" before "rate of interest" throughout RCW 39.44.030 in 1965. Laws of 1965, 1st Ex. Sess., ch. 74, § 3. p. 1893, effective April 2, 1965. The Legislature did not add "effective" to RCW 36.67.040.

"Effective" is not defined in the statutes. The parties agreed that "'[e]ffective' interest rate is a weighted average of the various coupon rates over the life of the bonds." Clerk's Papers, at 27. Accepting this definition, the two statutes can be harmonized without the majority's judicial amendment. A governing body could select a maximum effective rate of interest of, for example, 7 percent. This selection would be limited by the "not exceeding eight percent [interest] per year" language of RCW 36.67.040. However, as long as the maximum of 8 percent interest in any one year was not exceeded, the interest rates over the life of the bonds could be averaged.

King County ordinance 6808 states that the bonds shall bear interest at the lowest net effective interest rate of 8 percent or less. The Notice of Bond Sale requires that the following appear on the bids:

1. The *net effective interest rate on the bonds shall not exceed 8% per annum,* and *each installment of interest on each bond shall be evidenced by a single rate.*

2. One or more interest rates may be fixed for the bonds but such rate or rates must be in multiples of 1/8 or 1/20 of 1%.

3. *A single interest rate must be fixed for all bonds maturing on the same date.*

4. The spread between the highest and lowest coupon rates shall not exceed 2%.

5. Interest rates specified for bonds maturing on December 1, 1998, and thereafter, shall not be less than the interest rate specified for the preceding maturity year.

6. Each bid shall provide for payment of accrued interest to date of delivery and shall specify either (a) the lowest rate or rates of interest and premium above par at which the bidder will purchase the bonds, or (b) the lowest rate or rates of interest at which the bidder will purchase the bonds at par.

7. Each bid shall state the total interest cost, total premium, the net interest cost to the County and the net effective interest rate thereunder, but such statements shall not be considered a part of the bid.

. . .

The County may reject any and all bids and readvertise the bonds for sale in the manner provided by law. No bid for less than the entire issue will be considered. The County Council reserves the right to waive any irregularities that may appear in any bid or the bidding process.

(Italics mine.) Exhibit B of Plaintiff's Exhibit 8, at 2.

Given the definition of "effective" as a "weighted average", King County's selection of a net effective interest rate which equals the actual interest rate allowed by law makes it possible that the actual interest rate of 8 percent in one year may be exceeded. This is not allowed.

The statutory language focuses on the interest in any one year, not the coupon rate. However, the Notice of Bond Sale requirements mandate that "each installment of interest on each bond shall be evidenced by a single rate" and "[a] single interest rate must be fixed for all bonds matur-

ing on the same date." Exhibit B of Plaintiff's Exhibit 8, at 2. Therefore, the coupon rate and amount of interest paid in any one year under this plan will be a constant figure. Averaging the various constant interest rates on different series of bonds over the life of the bond issue to get an average of 8 percent enables some series of bonds to bear a single interest rate of more than 8 percent. Because I believe this contravenes the clear mandate of RCW 36.67-.040, I dissent.

DORE, J., concurs with GOODLOE, J.