IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

DENIS FURY and GAIL FURY,             )       No. 69294-1-I
individuals, and the marital community )
composed thereof; TANNER WAY LLC, )
a Washington limited liability company; )
TOM WEBER, an individual; KEN         )
PARSONS and NANCY PARSONS,            )
individuals, and the marital community )
Composed thereof; TOM THORNTON        )
and NANCY THORNTON, individuals,      )
and the marital community composed    )
thereof; DAHLGREN FAMILY LLC #7,      )
a Washington limited liability company, )
                                      )
                    Appellants,       )
                                      )
        v.                            )
                                      )
THE CITY OF NORTH BEND,               )       UNPUBLISHED OPINION
                                      )
                    Respondent.       )       FILED: October 21, 2013
                                      )

        VERELLEN, J. — The owners of five parcels within a utility local improvement

district (ULID) appeal the trial court's grant of summary judgment to the City of North

Bend (City). The owners contend that instead of remanding the matter for a limited

hearing on the propriety of the assessments imposed on the owners, the superior court

should have annulled their assessments all together, allowing the City to pursue a

reassessment of those five parcels. RCW 35.44.250 states that a court shall annul an

assessment if it is founded on a "fundamentally wrong basis." A "fundamentally wrong

basis" involves errors in the procedures used by the municipality.

After receiving a petition for a sewer system improvement from property owners, the City passed an ordinance for construction of a vacuum system, specifying the cost would be approximately $11.7 million. When the City then expanded the ULID to accommodate more parcels, the City determined the increased size of the ULID required construction of a gravity sewer system, which would cost approximately $19 million. The City did not pass a new ordinance specifying the material change in design and cost of the improvement; rather, it proceeded with construction and approved construction contracts by resolution.

Under RCW 35.43.100, the passage of the ordinance creating an improvement district triggers a 30-day window in which the affected property owners may file suit to challenge the improvement district. Because the City did not pass a new ordinance after determining it would build a gravity system, the property owners did not have the opportunity to protest the substantially increased cost of the improvement under RCW 35.43.100. Rather, the appealing property owners had the opportunity to challenge the construction of the gravity system only after the assessments were imposed. We reverse the trial court and annul the assessments of the five parcels at issue, allowing the City to pursue a reassessment.

## FACTS

### a. Establishment of ULID No. 6

In November 2007, after receiving a petition for sewer service from some property owners, the City created ULID No. 6, which authorized the City to purchase and install a vacuum sewer system. The ULID was enacted through Ordinance 1293 and provided in part: "The City Council orders the following described improvements:

2

Design and construction of a *vacuum sewer system* in the herein specified portions of the City of North Bend Final Comprehensive Sewer Plan."[1]

Ordinance 1293 estimated the cost of the sewer improvement to be approximately $11.7 million, and, pursuant to RCW 35.44.020, set forth the various components of the total estimated cost:

> The total estimated cost and expense of the improvements is declared to be $11,685,032. The entire cost and expense of the improvements including all labor and materials required to make a complete improvement, all engineering, surveying, inspection, ascertaining ownership of the lots or parcels of land included in the assessment district, and all advertising, mailing and publication of notices, accounting, administrative printing, legal interest and other expenses incidental thereto, shall be borne by and assessed against the property specially benefited by such improvement included in the [ULID] embracing as nearly as practicable all property specially benefited by such improvement.[2]

After the passage of Ordinance 1293, other property owners requested inclusion in the ULID.[3] The City determined the authorized vacuum system would not provide sufficient capacity to the expanded ULID and installed a gravity sewer system instead. The cost of the gravity sewer system was approximately $19 million.

b. Notice and Opportunity to Protest Assessments

After construction of the gravity sewer system was complete, the City sent notices of the proposed assessments, giving those property owners who wished to

---

[1] Clerk's Papers at 81 (emphasis added).

[2] Clerk's Paper at 81.

[3] See Clerk's Papers at 86 (Ordinance 1452). Ordinance 1452 references Ordinance 1312, but the parties did not include Ordinance 1312 in the record. However, we take judicial notice of the public record, which states there was a public hearing on May 20, 2008 and June 3, 2008 on the proposed expansion of the ULID, and it was determined to be in the best interests of the City and the property owners to include the previously omitted properties.

3

protest the assessments an opportunity for a hearing. Thirty-four property owners filed written protests of the assessments. The City appointed a hearing examiner to conduct a hearing and file his recommendations with the city council.

The hearing took place on November 10, 2011 and December 20, 2011. The hearing examiner stated at the beginning of the hearing that the property owners "will have a chance to ask questions of any city rebuttal witnesses or evidence."[4] The City presented testimony from Ron Garrow, the City's public works director, from the city engineer, and from Deborah Foreman, the appraiser.

c. Testimony on Change from Vacuum to Gravity Sewer System

On the issue of the change from the vacuum system to the gravity system, Garrow testified that the city council approved the gravity system when it approved the construction contracts for the project.[5] Garrow testified:

Q. Who made the decision to switch to a gravity system?

A. That was a technical decision through not only the consultants but also the City.

Q. Did the City Council ever pass a resolution approving of a gravity system?

A. They approved the construction of the gravity system through the acceptance of the bids for that project.

Q. Did they—but did they ever pass an ordinance or resolution expressly saying the project is dually [sic] changed due to a gravity system?

---

[4] Transcript (Tr.) (Nov. 10, 2011) at 7.

[5] Resolution 1390, passed on October 6, 2009, accepted the construction bid for piping construction, but did not specify the type of sewer that would be installed. By Resolution 1435, the city council awarded the pump station contract.

A. Not as a separate ordinance, no.[6]

Garrow further testified that the City consulted with its own staff, its consultants, and the city attorney and determined that

> the value of the project was still less than the special benefits that were determined at the time [of the proposal for the vacuum sewer system] and therefore because we were still underneath the special benefit, the project was still viable and we didn't have to go out for district property owners' approval [for the gravity sewer system] to go any further.[7]

d. Testimony on the City's Special Benefits Analysis

To support the amount of the assessments, the City presented testimony showing the amount of the special benefit afforded to each property owner. Foreman conducted a preliminary special benefits study in 2007. Foreman assessed the average value per square foot of each property within the ULID, and then determined the special benefit the new sewer system would add to each property. For vacant land, Foreman determined that the addition of a City sewer system would add 25 percent in value.

In 2011, Foreman made her final special benefits study, concluding that the addition of a City sewer system to vacant land would add approximately 25 percent in value (the same calculation as in 2007). The final special benefits study concluded the "after" value of all of the property within the ULID was $256,229,300 and the "before" value of the property within the ULID was $230,415,600, rendering $25,813,700 in ULID special benefits. With the total cost of the sewer project at $19,270,000, the City was able to assess 100 percent of the ULID project costs to ULID property owners.

---

6 Tr. (Nov. 10, 2011) at 51-52.

7 Tr. (Dec. 20, 2011) at 338.

Many of the owners contested Foreman's appraisal of the property and corresponding special benefits. For instance, appellant Fury presented evidence that he purchased his parcels for $475,000 in 2010 with knowledge of the ULID; Foreman's appraisal of the "after" fair market value of those parcels was $1,122,400. Others highlighted that Foreman's square foot values were the same in 2007 as they were in 2011, reflecting Foreman's failure to take into account the market downturn.[8]

e. Continuation of Hearing

At the conclusion of the first hearing day, the hearing examiner continued the hearing to December 20 to allow the City to submit rebuttal testimony. On December 20, the City distributed materials to the owners rebutting the owners' protests to the assessments. The hearing examiner noted the objections of the property owners to the new material, but did not grant additional time for surrebuttal. The City also introduced some exhibits which were never provided to appellants before or during the first day of hearing.

After the City presented its rebuttal testimony, some of the property owners raised challenges to the fairness of the hearing. They argued the City did not provide the owners with the rebuttal information until the night of the December 20 hearing, and

---

[8] They specifically argued Foreman neglected to consider the post-2008 decrease in development, rendering Foreman's appraised values for "highest and best use" impossible to obtain. Protest Letter 32 at 5-15; see also Protest Letter 33 at 25-26 (explaining the dearth of lending for proposed commercial developments renders most projects de facto infeasible). Other owners presented the opinion of an accredited appraiser, who stated Foreman did not provide a basis for determining average values and did not utilize market data to determine special benefits. See Protest Letter 28 at 72-87; Protest Letter 30 at 10-14.

6

all voiced concern that the hearing examiner did not allow them to present additional witnesses after the City's rebuttal testimony.[9]

The property owners presented expert evidence to rebut Foreman's appraisals, arguing there was a significant downturn between 2007 and 2011, resulting in up to 40 percent loss in total value. On cross-examination,[10] Foreman testified she did not make any significant downward adjustment to pre-crash sale and valuation data. She did not offer a full explanation, but suggested that her report did not incorporate market decline from 2008 to 2011, in part because the market began to recover in 2011.

The hearing examiner issued findings and conclusions and recommended adopting the assessments proposed by the City, with the exception of protests 4, 26 and 33. The hearing examiner declined to rule on the procedural due process issues raised by the property owners.

f. Appeal to City Council and Superior Court

The owners of ten of the parcels, including the five parcels at issue in this appeal, appealed the hearing examiner's recommendation to the city council. The city council, via Ordinance 1452, accepted and adopted the hearing examiner's findings,

---

[9] Specifically, the property owners objected because Foreman's complete files were not available to them until after the first hearing, and because the City did not disclose certain rebuttal evidence until the second day of hearing. See Exs. 26, 37 (requesting disclosure of rebuttal evidence five days before the continued hearing date and reserving the right to respond to rebuttal evidence); Ex. 30 (requesting all reports on which the City relied to support the assessments); Ex. 31 (requesting another opportunity to examine Foreman because the City did not disclose her files until after the first hearing day); Ex. 77 (handwritten letter from Dahlgren).

[10] While the owners did have the chance to cross-examine both Foreman and Garrow, it became apparent that other City employees in the planning department had the personal knowledge underlying Foreman and Garrow's testimony. See Tr. (Dec. 20, 2011) at 221, 315, 358-59.

7

conclusions and recommendations, confirming the assessment. The city council also concluded "the ULID property owners and or their legal counsel . . . were afforded the opportunity to question City witnesses; all persons appearing at said hearing were heard."[11]

Of the ten who appealed to the city council, five appealed the city council's decision to superior court. These property owners are Dennis and Gail Fury and Tanner Way LLC, Tom Weber, Ken and Nancy Parsons, Tom and Nancy Thornton, and the Dahlgren Family LLC. Upon review of the record and oral argument, the superior court concluded:

> Appellants did not have a meaningful opportunity to review written materials presented during the City's rebuttal before the Hearing Examiner, and Appellants having requested the opportunity to examine employees of the City Planning Department who provided information to the two City witnesses who testified at the hearing.[12]

The superior court then issued an order remanding the case to the hearing examiner for a limited hearing to allow for "[r]eview of the written materials presented during the City's rebuttal" and "examination of City Planning Department employees who provided information to the City's witnesses."[13]

The owners of the five parcels appeal the superior court's order of remand,[14] contending the court should have annulled the assessments because (1) RCW 35.44.250

---

[11] Clerk's Papers at 87.

[12] Clerk's Papers at 151-52.

[13] Clerk's Papers at 152. Appellants did argue to the court that the remedies available to them were limited by RCW 35.44.250, and that crafting a "limited" remand was outside the scope of the statute. See Clerk's Papers at 148-50.

[14] This court previously determined the order of remand was appealable as a matter of right.

8

does not authorize the superior court to remand, and the court determined procedural irregularities had deprived the owners of a fair process; (2) the City materially changed the sewer improvement from a vacuum system to a gravity system, substantially increasing the cost and thereby unlawfully increasing the assessments; and (3) the City's appraiser estimated the assessments upon a fundamentally wrong basis because she did not take into consideration decreased property values.[15]

## DISCUSSION

### a. Standards of Review

RCW 35.44.250 sets forth the procedure by which to appeal assessments to superior court. The statute provides relief to property owners if a ULID assessment is founded upon a "fundamentally wrong basis and/or the decision of the council . . . was arbitrary or capricious":

> [T]he superior court shall hear and determine the appeal without a jury . . . . The judgment of the court shall confirm, unless the court shall find from the evidence that such assessment is founded upon a fundamentally wrong basis and/or the decision of the council or other legislative body thereon was arbitrary or capricious; in which event the judgment of the court shall correct, change, modify, or annul the assessment insofar as it affects the property of the appellant.[16]

"Arbitrary and capricious" refers to "willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action."[17] An action

---

[15] In the alternative, appellant Dahlgren requests a modification of his assessment on the grounds that his assessment is greater than the special benefit the sewer system provides to his property.

[16] RCW 35.44.250.

[17] Abbenhaus v. City of Yakima, 89 Wn.2d 855, 858, 576 P.2d 888 (1978).

taken after due consideration is not arbitrary and capricious even though a reviewing court may believe the action to be erroneous.[18]

In Abbenhaus v. City of Yakima, our Supreme Court adopted the lower court's definition of "fundamentally wrong basis," which was "'some error in the method of assessment or in the procedures used by the municipality, the nature of which is so fundamental as to necessitate a nullification of the entire LID, as opposed to a modification of the assessment as to particular property.'"[19] The Abbenhaus court then noted the lower court's definition was inconsistent with the legislative mandate of RCW 35.44.250 that relief be awarded "insofar as it affects the property of the appellant."[20] Accordingly, a "fundamentally wrong basis" involves error in the method of assessment or in the procedures used by the municipality, but relief is available only to those property owners who challenge their assessments.

Appellate review of the superior court's determination under RCW 35.44.250 "should not be an independent consideration of the merits of the issue but rather a consideration and evaluation of the decision-making process."[21] On appeal, we

---

[18] Id. at 858-59.

[19] 89 Wn.2d 855, 859, 576 P.2d 888 (1978) (quoting Cammack v. Port Angeles, 15 Wn. App. 188, 196, 548 P.2d 571 (1976)).

[20] Id. ("[W]e emphasize that the statute [RCW 35.44.250] provides that where such fundamental error exists the court is limited to nullification or modification only of those parcel assessments before it.").

[21] Id. at 859-60.

consider the record before the hearing examiner.[22] To the extent the appellants raise issues of statutory interpretation, we review de novo the meaning of a statute.[23]

### b. Fundamentally Wrong Basis

The appellants contend their assessments are founded on a fundamentally wrong basis and must be annulled because they did not receive adequate notice of the cost of the gravity sewer system. To support their argument, appellants rely predominately on RCW 35.43.070, which provides that an improvement may be ordered only by ordinance; on RCW 35.43.100, which provides a 30-day period, triggered by the ordinance forming the ULID, in which to protest the formation of a ULID; and on RCW 35.44.020, which requires the City to provide a cost estimate for the authorized improvement.

### 1. RCW 35.43.070 & RCW 35.43.100

RCW 35.43.070 mandates that whether by petition or resolution, all improvement districts must be created through ordinance: "A local improvement may be ordered only by an ordinance of the city or town council, pursuant to either a resolution or petition therefor. The ordinance must receive the affirmative vote of at least a majority of the members of the council."

Appellants argue the change to the gravity system was unlawful because the city council did not approve the change from a vacuum system to a gravity system through enactment of a separate ordinance. Ordinance 1293, which authorized the City's initial

---

[22] Id. at 860.

[23] Pasco v. Pub. Emp't Relations Comm'n, 119 Wn.2d 504, 507, 833 P.2d 381 (1992).

proposal for construction of the vacuum sewer system, specified the improvement as a "vacuum sewer system" and estimated a cost of $11,685,032.

The City responds that nothing in the plain language of RCW 35.43.070 prevents a municipality from approving increased cost of an improvement. The City highlights that the same section of Ordinance 1293 that specified construction of the vacuum system also stated that "[a]ll of the foregoing . . . may be modified by the City Council as long as such modification does not affect the purpose of the improvement."[24] Further, the City highlights that the city council approved the change from a vacuum system to a gravity system by resolutions that awarded the construction contracts for the gravity system. Appellants also point out that RCW 35.43.100 gives property owners 30 days to contest a ULID after passage of the ordinance. The statute reads:

> The council may continue the hearing upon any petition or resolution provided for in this chapter and shall retain jurisdiction thereof until it is finally disposed of. The action and decision of the council as to all matters passed upon by it in relation to any petition or resolution shall be final and conclusive. No lawsuit whatsoever may be maintained challenging the jurisdiction or authority of the council to proceed with the improvement and creating the local improvement district or in any way challenging the validity thereof or any proceedings relating thereto unless that lawsuit is served and filed no later than thirty days after the date of passage of the ordinance ordering the improvement and creating the district or, when applicable, no later than thirty days after the expiration of the thirty-day protest period provided in RCW 35.43.180.[25]

Appellants rely on Buckley v. City of Tacoma[26] to refute the City's position that it could make material changes to the cost of the improvement without regard to the

---

[24] Clerk's Papers at 81.

[25] RCW 35.43.100. RCW 35.43.180 applies only to improvement districts initiated by resolution, rather than petition. ULID No. 6 was initiated by petition.

[26] 9 Wash. 253, 37 P. 44 (1894).

statutory procedures. There, our Supreme Court invalidated assessments levied by Tacoma where the city had passed a resolution to improve a street by grading and installing sidewalks but provided no details. Once the city completed the work, it passed another resolution taxing property owners for the improvement. The court reasoned that "the difference in cost [between the vague proposal and what was actually installed] may mean an easy payment by the owner in one case and substantial ruin in another."[27] The court further noted that to allow such a process would be "to cut off from property owners all knowledge of what they will be expected to answer for, and to deprive them of the opportunity to remonstrate in sufficient numbers if they see fit."[28, 29]

Appellants did not have the opportunity to protest the change to a gravity sewer system and its resulting 63 percent cost increase because the City did not pass a new

---

[27] Id. at 262.

[28] Id.

[29] Appellants rely on George v. City of Anacortes, 147 Wash. 242, 265 P. 477 (1928) for the proposition that a municipality cannot set forth the particulars of an improvement and then substantially change them. Appellants' reliance on George is misplaced. In that case, the city changed the location of the water system improvement. George, 147 Wash. at 244-45. The court rejected the city's change because the ordinance had detailed the specific street where the main was to be located, and the record presented "no change of situation requiring a departure from the plan, lack of feasibility, or any reason other than a desire to substitute a different plan than that submitted to the people." Id. at 246. Here, while the change to a gravity system materially increased the cost, that change in cost was forced by feasibility concerns—a vacuum sewer system would not meet the projected capacity of the expanded ULID. Further, the remedy awarded to the property owners in George was to order the city to install the main in the original location. This type of remedy is not available here because the dispute arose after the gravity system had already been constructed.

Appellants also rely on Sane Transit v. Sound Transit, 151 Wn.2d 60, 68, 85 P.3d 346 (2004) for the proposition that taxpayer funds cannot be used to construct a substantially different public project than the one approved by voters. That case involved a public project approved by voters in multiple counties, unlike the ULID at issue here, which taxes only the benefited property owners.

ordinance under RCW 35.43.070 specifying this material change. Appellants' only opportunity to challenge ULID No. 6 was within 30 days of the passage of Ordinance 1293. But Ordinance 1293 described a materially different, and much less expensive, sewer system. Appellants were accordingly without recourse to invoke RCW 35.43.100 to challenge the substantially increased cost of the vacuum system.

Consistent with RCW 35.43.070, RCW 35.43.100, and Buckley, once the City became aware of the substantially increased cost of the gravity sewer system, it should have passed a new ordinance giving the property owners a new opportunity to protest.

2. RCW 35.44.020

Appellants also rely on RCW 35.44.020, which requires certain cost items to be included in every local improvement for assessment against the property in the district, and specifically requires "[t]he cost of all of the construction or improvement authorized for the district."[30]

At oral argument, the City contended that once a ULID is formed, the City has carte blanche to authorize cost increases for the improvement, as long as the total cost does not exceed the special benefit afforded to the property owners. We are not persuaded. RCW 35.44.020 requires the City to include a cost estimate. If the City has latitude to materially increase the initial cost estimate without proper notice to the property owners, RCW 35.44.020 serves no purpose.

---

[30] "There shall be included in the cost and expense of every local improvement for assessment against the property in the district created to pay the same, or any part thereof: (1) The cost of all of the construction or improvement authorized for the district including, but not limited to, that portion of the improvement within the street intersections; (2) The estimated cost and expense of all engineering and surveying necessary for the improvement done under the supervision of the city or town engineer." RCW 34.44.020.

14

c. Remedy of Property Owners

Finally, the City emphasizes it was necessary to change the type of sewer system because the City expanded the ULID to serve additional property owners. Once the ULID expanded, the City conducted a value engineering study on the proposed vacuum system. The study revealed that the vacuum system would not work "because the expected flows from the properties to be served was going to exceed the capacity of what a vacuum system could handle and therefore the design had to be changed to a gravity system."[31]

We recognize that to accommodate all of the property in the expanded ULID, the City had to construct a system with appropriate capacity. However, once the City became aware of the substantially increased cost of the gravity sewer system, it should have passed a new ordinance, thus triggering a new notice and protest period for all property owners within the expanded ULID. As the appellants vigorously protest, the only validly created ULID was for a $11.7 million vacuum sewer system. No ULID was ever created for a $19 million gravity sewer system.

Although the City passed resolutions adopting construction contracts for the gravity system, in proceedings open to the public, these procedures were in violation of the statutory requirements for creation of improvement districts. The City does not have authority to impose assessments for an improvement not created under the ULID statutes. The property owners should have had the chance to protest the substantial and material changes to the sewer system. Because we have determined the City's

---

[31] Tr. (Nov. 10, 2011) at 15.

material change to sewer improvement necessitated the passage of a new ordinance and a new 30-day protest period, we decline to address the remaining issues.[32]

Consistent with Abbenhaus, we reverse the trial court and annul the assessments only of the appealing property owners, allowing the City to pursue a reassessment.[33]

WE CONCUR:

---

[32] With the annulment, the procedural issues raised in this appeal are moot.

[33] In both their opening brief and reply brief, appellants acknowledge that a city may proceed with a reassessment after an assessment is nullified. RCW 35.44.280. See Br. of App. at 41; Reply Br. at 19.